**SPRINGFIELD MARINE BANK, an Illinois Banking Corporation, Plaintiff,**

**v.**

**S. S. KRESGE COMPANY, a Michigan Corporation, Defendant.**

**Civ. A. No. 2544.**

United States District Court
S. D. Illinois, S. D.
Feb. 19, 1960.

Robert B. Oxtoby, Van Meter & Oxtoby, Springfield, Ill., for plaintiff.

Paul W. Gordon, Jr., Brown, Hay & Stephens, Springfield, Ill., for defendant.

POOS, District Judge.

The plaintiff sues to recover, from the defendant, taxes paid to the County Collector of Sangamon County, Illinois, on real estate in the amount of $27,993.24 plus interest and costs. The plaintiff, as Trustee, is the owner of business property located at 127 South Fifth Street, Springfield, Illinois. The defendant is the lessee of this property under a written lease which runs for 99 years from the date of the execution of the lease. This lease provides for a stipulated yearly rental, plus taxes. The parties disagree on the construction of the lease provision concerning the taxes. The provision of the lease is as follows:

"As a part of the consideration of this lease, and in addition to the cash rental hereinabove provided, the lessee covenants and agrees to pay to lessor, during the period from July 1, 1929 to June 30, 1979, any increase in the real estate taxes over and above the amount of said real estate taxes paid by the lessor on the demised premises for the year 1929, to the extent that any such increase in said real estate taxes is the direct result of improvements made upon said property by the lessee. During the last 47 years of the term hereby created, the lessee agrees to pay all of the real estate taxes levied or assessed upon the demised premises."

The taxes on the demised premises for the year 1929 amounted to $696.68, based on an assessed valuation of $15,780. At the time of the execution of the lease it was contemplated by both parties that defendant would raze the property and that an entire new building would be erected, which was done in 1930. It is pertinent here to point out that the lot or parcel of ground on which the new building is located is assessed separately from the improvement, so that the taxes paid in question involve only the taxes on the building. When the improvement was completed the new assessed valuation rose to $28,190, an increase of $12,410 in valuation, resulting when taxes were

extended by the rate applicable to a total tax in 1930 of $1,244.58. There is no dispute involving the taxes through the year 1945.

Due to tax legislation known as the Butler bills, and because assessed valuations were far below actual valuations, a new system was devised by the legislature of Illinois to bring assessed values up to more nearly actual values. Exhibit "B" attached to the stipulation shows how the new legislation affected the tax structure or tax valuations on the structure, viz.:

| Year | Assessed Valuation | Equalization Factor | Equalized Valuation | Tax Rate | Tax Obligation |
|------|--------------------|---------------------|---------------------|----------|----------------|
| 1946 | $25,380 | 3.7037 | $ 94,000 | $1.78 | $1,673.20 |
| 1947 | 59,210 | 3.8462 | 227,740 | 2.20 | 5,010.28 |
| 1948 | 59,210 | 4.0000 | 236,840 | 2.1025 | 4,979.56 |
| 1949 | 59,210 | 4.0000 | 236,840 | 2.23 | 5,281.53 |
| 1950 | 33,650 | 4.0000 | 134,600 | 2.24 | 3,015.04 |
| 1951 | 33,650 | 4.1667 | 140,210 | 2.252 | 3,157.53 |
| 1952 | 33,650 | 4.1667 | 140,210 | 2.34 | 3,280.91 |
| 1953 | 33,650 | 4.1667 | 140,210 | 2.44 | 3,421.12 |
| 1954 | 33,650 | 4.3478 | 146,310 | 2.5084 | 3,670.04 |
| 1955 | 33,650 | 4.3478 | 146,310 | 2.5876 | 3,785.91 |
| 1956 | 33,650 | 4.3478 | 146,310 | 2.6264 | 3,842.68 |
| 1957 | 33,650 | 4.7620 | 160,240 | 2.5335 | 4,059.68 |
| 1958 | 28,500 | 5.8824 | 167,650 | 3.1663 | 5,308.30 |

Exhibit "C" shows the valuation tax structure on the land exclusive of building, viz.:

| Year | Assessed Valuation | Equalization Factor | Equalized Land Valuation | Tax Rate | Tax Obligation |
|------|--------------------|---------------------|--------------------------|----------|----------------|
| 1946 | $85,190 | 3.7037 | $315,518 | $1.78 | $5,617.22 |
| 1947 | 51,340 | 3.8462 | 197,464 | 2.20 | 4,344.21 |
| 1948 | 51,340 | 4.000 | 205,360 | 2.1025 | 4,318.09 |
| 1949 | 51,340 | 4.000 | 205,360 | 2.23 | 4,579.53 |
| 1950 | 51,340 | 4.000 | 205,360 | 2.24 | 4,600.06 |
| 1951 | 55,280 | 4.1667 | 230,335 | 2.252 | 5,187.14 |
| 1952 | 55,280 | 4.1667 | 230,335 | 2.34 | 5,389.84 |
| 1953 | 55,280 | 4.1667 | 230,335 | 2.44 | 5,620.17 |
| 1954 | 55,280 | 4.3478 | 240,346 | 2.5084 | 6,028.84 |
| 1955 | 55,280 | 4.3478 | 240,346 | 2.5876 | 6,219.19 |
| 1956 | 55,280 | 4.3478 | 240,346 | 2.6264 | 6,312.45 |
| 1957 | 55,280 | 4.7619 | 263,238 | 2.5335 | 6,669.13 |
| 1958 | 19,310 | 5.8824 | 113,589 | 3.1663 | 3,596.90 |

Under the terms of the lease the lessor, plaintiff, obligated itself to pay the taxes as shown by Exhibit "C", and has paid the same. The dispute arises as to the taxes shown by Exhibit "B", viz., whether or not the taxes as shown by Exhibit "B" should be paid by the lessee, less an annual sum of $696.68 multiplied by the number of years, thirteen to be exact; or whether or not the valuation

on the building structure as it existed in 1929 should be increased by the application to it of the equalization factor for the years 1946, 1947, 1948, 1949, 1950, 1951, 1952, 1953, 1954, 1955, 1956, 1957, 1958 and such future equalization factors for each new year from 1959 to June 30, 1979.

The defendant paid taxes to lessor as follows: $632.64 for 1946, $3,674.87 for 1947, $3,652.46 for 1948, $3,873.95 for 1949 and $1,601.15 for 1950, and since 1950 has paid no taxes. These tax payments were applied by lessor as against the actual taxes for each year. The total amount paid by defendant lessee is $13,435.07, and the total amount paid by plaintiff lessor is $50,485.78, leaving a deficit of $37,050.71, less 13 times the sum of $696.68, or $9,056.84, resulting in a final balance of $27,993.87, the amount that lessor plaintiff contends is due it if the court finds that the contention of plaintiff is correct.

The contention of the plaintiff was concurred in by defendant by remittances to plaintiff through the year 1949. Since that time the provisions of the lease concerning the taxes to be paid by defendant are in dispute. The total tax due, as contended by plaintiff, in 1950 as shown by Exhibit "D–10" was $3,873.95. The defendant, in accordance with its construction of the lease, remitted $1,601.15. Both parties as disclosed by the correspondence between them remain firm in their contentions, resulting in the instant suit.

■■ It is up to the Court to resolve the issue. The parties agree that the court cannot rewrite the lease and that the court must confine itself to the four corners of the lease instrument to ascertain the intention of the parties at the time the lease was executed. It is permissive to inquire of the circumstances surrounding the parties at the time the lease was drawn, not for the purpose of rewriting their contract, but as an aid in determining their intention and to help in arriving at a proper construction of the lease. The language of the lease that must be construed is as follows:

"* * * the lessee covenants and agrees to pay the lessor during the period from July 1, 1929 to June 30, 1979, any increase in the real estate taxes over and above the amount of said real estate taxes paid by the lessor on the demised premises for the year 1929 to the extent that any such increase in said real estate taxes is the direct result of improvements made upon said property by the lessee."

The lessor knew at this time that his taxes on the old building razed by lessee was $696.68. He covenanted that his proportion of the taxes would not exceed this amount. In fact this was concurred in by lessee, the defendant herein, until the year 1949 by the payment of taxes in excess of this amount to the plaintiff. The lessee had the privilege of either remodeling the building or razing the old building and erecting an entirely new building on the real estate in question. It elected to raze the old building and replace it with a new one. It thus destroyed completely the old building and by this action fixed a tax base for the old building. All that remains for taxing purposes is the new structure. The parties to the lease agreement had in mind "any increase in real estate taxes over and above the amount ($696.68) of said real estate taxes paid by the lessor for the year 1929 to the extent that any such increase is the direct result of improvements made * * * by the lessee." In construing this language it must be kept in mind "taxes" and "increase in taxes" were the words used. At no time were assessed valuations or equalization factor ever referred to. They knew at that time that real estate assessments were made every four years in Illinois. The defendant does not contend that the building in question is anything but a new improvement, but rather it contends that as to this new improvement it should be impressed with a valuation of $15,780 multiplied by the various factors that came into the existence by reason of new tax legislation in Illinois passed long after the execution of the lease. The

452

lessor, in drawing this lease, knew that the law concerning taxation might be changed by the legislature and protected himself against this by surely, definitely and positively specifying that he was to pay only taxes in the future that would not exceed $696.68. The lessor did not know, or did anyone else, that legislation providing for equalization factors would appear on the statute book of Illinois, but he did know how to protect himself by providing in the lease that he would pay no more than taxes that were fixed by those due in 1929 on the old building, providing further that any new improvement to be erected should bear the increase in taxes over this amount, and he so provided when he used these words: "to the extent that any such increase in real estate taxes is the direct result of improvements made upon said property by the lessee." Further what old value there was in the old building was destroyed when it was replaced by the new structure, and the valuation that has existed since 1930 can only be a valuation that is a direct result of improvements made by lessee. It is plain that the lessee did not protect itself against inflation when the lease was executed. The lessor did when he fixed a definite amount, and the lessee agreed that it would bear any increase in taxes over the figure that was definitely and undisputedly established. It is not possible to read into this lease the words "multiplier", "equalization factor", "equalized building valuation", or any other such words. The lease can only be construed from its four corners to mean that after the new improvement was erected, lessor would pay taxes of $696.68 in each year until June 30, 1979, and until the arrival of this date and that lessee would pay any increase yearly over this figure, and after June 30, 1979, would pay all the taxes.

The lease in question, containing no ambiguity of language or in the terms used is the only criterion of the intention of the parties. A somewhat similar question was presented in Bradley v. S. S. Kresge Co., 7 Cir., 214 F.2d 692, and while the facts are not exactly similar,

the reasoning of the court is applicable and I believe the lease is construed in accordance with Hornbook law on the subject.

Attorney for plaintiff will prepare findings of fact and conclusions of law, and submit the same to the court for approval. Thereafter judgment will be entered in favor of plaintiff.