SPRINGFIELD MARINE BANK, an Illinois Banking Corporation, Plaintiff-Appellee,

v.

S. S. KRESGE COMPANY, a Michigan Corporation, Defendant-Appellant.

No. 13016.

United States Court of Appeals Seventh Circuit.

Oct. 28, 1960.

Paul W. Gordon, Jr., Springfield, Ill., W. E. Cornell, Detroit, Mich., Brown, Hay & Stephens, Springfield, Ill., of counsel, for appellant.

Robert B. Oxtoby, Springfield, Ill., Van Meter & Oxtoby, Springfield, Ill., for appellee.

Before DUFFY and KNOCH, Circuit Judges, and GRUBB, District Judge.

DUFFY, Circuit Judge.

Plaintiff seeks to recover from defendant sums it has paid for taxes on real estate located in Springfield, Illinois, and which plaintiff, as successor trustee, claims defendant was obligated to pay under the terms of a lease agreement. The cause was tried by the Court on the pleadings and upon a stipulation of facts. The trial court determined the issues favorably to the plaintiff.

In 1927, George Pasfield, Jr., plaintiff's predecessor in title, was the owner of certain real estate in the business section of the City of Springfield, Illinois. There was a building upon the premises then occupied by R. F. Herndon Company. On August 25, 1927, Pasfield and defendant Kresge entered into a 99-year lease covering this property. At the time the lease was executed, the parties

contemplated that Kresge would demolish the old building and replace it with a new structure. In 1929, Kresge did demolish the old building, and in 1930, erected a new one.

The lease provides for a stipulated yearly rental plus taxes. The parties to this suit disagree as to the proper construction of the following provision of the lease:

"As a part of the consideration of this lease, and in addition to the cash rental hereinabove provided, the Lessee covenants and agrees to pay to the Lessor, during the period from July 1, 1929, to June 30, 1979, any increase in the real estate taxes over and above the amount of said real estate taxes paid by the Lessor on the demised premises for the year 1929, to the extent that any such increase in said real estate taxes is the direct result of improvements made upon said property by the Lessee. During the last forty-seven years of the term hereby created, the Lessee agrees to pay all the real estate taxes levied or assessed upon the demised premises.

"In the application of this paragraph, the first sentence thereof shall be construed as applying to the taxes for all years prior to the taxable year 1979, and to that part of the taxes for the taxable year 1979 properly attributable to the period from January 1, 1979, to June 30, 1979, inclusive, and in determining whether any increase of taxes has occurred for said half year period, and if so, the amount of such increase, the ratable proportion of the taxes for the taxable year 1929 shall be taken as a basis for comparison. The second sentence of this paragraph shall be construed as applying to that part of the taxes for the year 1979 properly attributable to the period between July 1, 1979, and December 31, 1979, inclusive, and

also to the taxes of the subsequent years up to and including the taxes for the year 2025, and for the year 2026, attributable to the period from January 1, 2026, to June 30, 2026, inclusive."

The parcel of ground upon which the Kresge building was erected was assessed separately from the improvement thereon. We are concerned here only with the taxes upon the new building. The real estate taxes on the improvement in the year 1929 were $696.68 based on an assessed valuation of $15,780.00. In the year 1930, after Kresge razed the old building and erected the present structure, the real estate taxes on the improvement were $1,244.58 based upon an assessed valuation of $28,190.00. There has been and is no dispute involving the taxes through the year 1945.

Due to the then low assessed valuations in that state, the Illinois legislature enacted new tax legislation known as the Butler bills.[1] The purpose was to bring assessed valuations more nearly in line with actual values. Under this legislation which became effective in 1946, the State Revenue Department gives to each county a multiplier or equalization factor by which the county is required to multiply all real estate assessments before extending real estate taxes.

Defendant paid taxes to lessor as follows: For 1946, $632.64; for 1947, $3,674.87; for 1948, $3,652.46; for 1949, $3,873.95; and for 1950, $1,601.15. It paid no taxes to lessor after 1950. Lessor applied these taxes as against the actual taxes assessed for the respective years. The total amount of these payments by defendant-lessee was $13,435.07. The total amount paid during said years by plaintiff-lessor was $50,485.78, leaving a deficit of $37,050.71. From this sum must be deducted $696.68 for thirteen years (1946 to 1958, inclusive), or a total of $9,056.84 which plaintiff concedes it was required to pay. This results in a final balance of $27,993.87, the

---

[1.] The Butler law was described and discussed by this Court in Bradley v. S. S. Kresge Co., 7 Cir., 1954, 214 F.2d 692, 693.

amount claimed by the plaintiff in this suit.

Plaintiff's contention is that construing the lease within the four corners of the document, it is clear that defendant, as lessee, is obligated to pay all taxes on the existing improvement for each year as specified in the complaint, less the annual sum of $696.68 which was the amount of the tax on the improvement for the year 1929.

Kresge, the lessee, contends the significant words in what it calls the limiting phrase are "direct result." It claims plaintiff's formula gives no effect to these words. It argues the tax clause of the lease means Kresge would be liable for any increase in the real estate taxes over and above the amount of taxes thereon for the year 1929 if the increase was an "immediate consequence" of the improvements on the property made by Kresge and were not the consequences of an intervening force. It argues the legislation known as the Butler bills could not have been foreseen, and it should not be required to pay all of the higher taxes resulting from the operation of that law.

The formula worked out by Kresge is: The improvements were valued at $15,780.00 in 1929; they were valued at $28,190.00 in 1930 after Kresge erected the new building. The increase in the value resulting from the new improvement was $12,410.00. Kresge says the increase is represented by the fraction $\frac{12410}{28190}$, or in percentage points, 44.0227%. Kresge would apply this percentage to each subsequent tax levied on the improvement.

As an aid in determining the intention of the parties, we may consider their respective situations at the time of the negotiation for and the execution of the lease. Although the lease was dated July 1, 1927, it actually was executed on August 25, 1927. The building then standing on the premises was occupied by Herndon under a lease which did not expire until June 30, 1929. It was, undoubtedly, contemplated by

the parties that until June 30, 1929, the old building would remain, but at the end of the Herndon tenancy, the building would be demolished. This was, in fact, done. This is also an explanation why for the first two years of the lease, the lessor was to pay all of the taxes.

Lessor had no control as to the cost of the new building except that it would be at least as valuable as the building destroyed. It was within the reasonable contemplation of both parties that Kresge would erect a modern store, and that the taxes thereon would be considerably higher than those assessed previously. As the trial court pointed out, the lessor well understood that the tax laws might be changed, and he protected himself by specifying he would not have to pay taxes on the improvement in excess of $696.68 which he had paid in 1929 on his own building.

Lessor understood he would be required to pay whatever tax was assessed against the underlying land; hence two taxable estates were created by the lease agreement. It is not a strained construction of the lease to say that any increase in taxes on the improvement must necessarily arise and directly result from the erection of the building by lessee in 1930.

The second paragraph of the tax clause is largely ignored by defendant. We think it throws some light on the first paragraph thereof. It reiterates the basic yardstick of liability, that is, increase in taxes over 1929. In determining whether any increase of taxes has occurred, the words used are: " * * the ratable proportion of the taxes for the taxable year 1929 shall be taken as a basis for comparison." No mention is made of any valuation for the year 1930 which is an indispensable part of defendant's formula.

The words used in the lease are "taxes" and "increase in taxes." There is no reference to assessed valuations. It is difficult to believe that the parties had in mind that the proportion of taxes on the improvement that each would pay could be ascertained only by the applica-

tion of a complicated computation such as is urged by defendant Kresge.

The District Court adopted the formula proposed by plaintiff-lessor as expressing the intention of the parties to the lease. We think the Court was correct in so doing.

The judgment in favor of plaintiff-lessor is

Affirmed.