THOMAS F. PATTON *et al.*, Trustees, Plaintiffs-Appellants, *v.* T.O.F.C., INC., Defendant-Appellee.

First District (1st Division)   No. 78-1936

Opinion filed December 10, 1979.

Frederic O. Floberg and William D. Serritella, both of Chicago (Ross, Hardies, O'Keefe, Babcock & Parsons, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith and William G. Swindal, of counsel), for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiffs, Thomas F. Patton and Ralph S. Tyler, Jr., trustees of the estate of the Erie Lackawanna Railway Company (Erie), filed a complaint for declaratory judgment against defendant, T.O.F.C., Inc., asking a declaration that defendant was contractually required to defend and indemnify Erie in a personal injury action which an employee of defendant had brought against Erie. This personal injury action included claims based on Erie's alleged strict products liability and violation of the Federal Safety Appliance Act. (45 U.S.C. §1 *et seq.* (1976).) On defendant's motion, the trial court dismissed Erie's complaint for failure to state a cause of action. Erie appeals.

The issues are: (1) whether the contractual language relied on by Erie for indemnification is specific enough to require defendant to assume Erie's defense and indemnify Erie for the underlying claims, and (2)

whether public policy precludes defendant from having to defend and indemnify Erie.

■■ Erie's appeal is from an order dismissing its complaint. Therefore, all facts well pleaded by Erie are accepted as true. (*Johnson v. Nationwide Business Forms, Inc.* (1976), 41 Ill. App. 3d 128, 359 N.E.2d 171.) Defendant and Erie signed an "Operating Agreement" on June 1, 1961, which gave defendant the exclusive right to load and unload piggyback trailers on and off railroad flat cars at Erie's Chicago railroad yard. On July 30, 1969, Erie executed an "Equipment Lease" with GATX-Armco-Booth (GATX), a partnership, under which Erie leased two "piggy-packers" from GATX. A piggypacker is a mechanical device used to load and unload piggyback trailers on and off railroad flat cars. On February 20, 1970, Erie and defendant entered into a "Sublease" under which Erie leased the two piggypackers to defendant. This sublease specifically incorporated all of the terms of Erie's equipment lease with GATX.

On May 25, 1977, Eugene Brosmore, one of defendant's employees, filed suit in the circuit court of Cook County for injuries he allegedly sustained on or about May 24, 1975, when he was allegedly run over by one of the piggypackers while it was being operated by another employee of defendant at Erie's Chicago railroad yard. In his complaint, Brosmore sued F.W.D. Wagner, Inc., the alleged manufacturer of the piggypacker; Raygo Wagner, Inc., the alleged distributor; GATX, the alleged purchaser and lessor; and Erie, the alleged lessee and sublessor. Brosmore asserted they were all members of the distribution chain, and strictly liable to him because his injuries were due to the piggypacker having been designed, manufactured and sold in an unreasonably dangerous condition. Brosmore also alleged in his complaint that Erie was liable to him for his injuries under the Federal Safety Appliance Act. 45 U.S.C. §1 *et seq.* (1976).

After Brosmore had filed his suit, Erie requested defendant to assume Erie's defense and indemnify Erie for any liability Erie might incur to Brosmore. Erie based its request on paragraphs 7 and 8 of its operating agreement with defendant, and also on paragraphs 10.2 and 13.1 of its sublease with defendant, which, in pertinent part, respectively provide:

OPERATING AGREEMENT

"7. TOFC covenants and agrees to protect, indemnify and hold harmless Erie from and against any and all claims, actions, losses, damages, costs and expenses which may be suffered or incurred by Erie or for which Erie might be held liable by reason of personal injury to or the death of any person or for theft, loss or destruction of or damage to any property which is caused by or results from or arises or grows out of any acts or omissions of TOFC, its officers,

agents or employees in connection with the operation or use of the terminal facilities.

8. TOFC assumes the entire risk and responsibility for the safety of its employees, officers and agents while on the terminal facilities and agrees to indemnify and save harmless Erie from any liability whatsoever by reason of injury to or death of any of TOFC's officers, agents or employees while on the terminal facilities even though the operation of Erie's railroad may have caused or contributed thereto."

SUBLEASE

"10.2 Lessee [TOFC] assumes all risks and liability for the Equipment lease hereunder and for the use, operation and storage thereof, and for injuries or deaths of persons and damage to property, howsoever arising from or incident to such use, * * *. Lessee shall save and hold Lessor [Erie] harmless from and against any and all losses, damages, claims, penalties * * * including attorney's fees howsoever arising or incurred because of or incident to any item of Equipment or the use, operation or storage or alleged use, operation or storage thereof."

"13.1 Lessee agrees to indemnify, reimburse and hold Lessor and any assignee of its interest in this Lease harmless from and against any and all claims, losses, liabilities, demands, suits, judgments, or causes of action and all legal proceedings, * * * and any costs and expenses in connection therewith, including attorney's fees and expenses, which may result from or grow or arise in any manner out of the condition, use or operation of the Equipment, during the term hereof, or which may be attributable to any defect in the Equipment arising from the material or any article used therein or from the design, testing or use thereof or from any maintenance, service, repair, overhaul, or testing of the Equipment, regardless of when such defect shall be discovered, whether or not such Equipment is at the time in the possession of the Lessee; provided, however, that Lessee shall be subrogated to all rights and remedies which Lessor may have against the manufacturers of the Equipment, which are hereby assigned by Lessor to Lessee. * * * "

Defendant refused to assume Erie's defense or agree to indemnify Erie. Erie then filed its complaint against defendant for declaratory judgment pursuant to section 57.1 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57.1). In its complaint, Erie asked the court to construe the rights of the parties under the operating agreement and sublease and to declare that each agreement required defendant to defend and

indemnify Erie. Defendant subsequently filed its motion to dismiss Erie's complaint for failing to state a cause of action. At the hearing on defendant's motion, defendant argued that the indemnification language in both the operating agreement and the sublease was not specific enough to require defendant to defend and indemnify Erie with respect to either of Brosmore's claims, and that public policy also prohibited Erie from being indemnified by defendant. After a hearing, the trial court granted defendant's motion to dismiss. Erie appeals from the dismissal of its complaint. We reverse and remand.

■ As a preliminary matter, Erie maintains, and defendant apparently agrees, that Brosmore's claim against Erie under the Federal Safety Appliance Act should be characterized as a strict liability action, without regard to the fact that when Brosmore asserted in his complaint that Erie had violated the Federal Safety Appliance Act he made several references to alleged negligent acts or omissions by Erie. We agree that a cause of action for an alleged violation of the Federal Safety Appliance Act is not based on negligence, but rather upon "strict" or "absolute" liability. (*Chicago, Rock Island & Pacific R.R. Co. v. Chicago, Burlington & Quincy R.R. Co.* (N.D. Ill. 1969), 301 F. Supp. 72, *aff'd* (7th Cir. 1971), 437 F.2d 6, *cert. denied* (1971), 402 U.S. 996, 29 L. Ed. 2d 161, 91 S. Ct. 2173; *Jenkins v. Chicago & Eastern Illinois R.R. Co.* (1972), 5 Ill. App. 3d 954, 284 N.E.2d 392.) In this instance, it is preferable to characterize Brosmore's claim under the Federal Safety Appliance Act as an action based on "absolute liability" instead of "strict liability" in order to distinguish it from Brosmore's other claim against Erie based on strict products liability theory.

Erie contends that its operating agreement and sublease with defendant are each specific enough to require defendant to assume Erie's defense and indemnify Erie for both Brosmore's strict products liability claim and his claim based on the Federal Safety Appliance Act. Defendant argues that an agreement will not be construed as indemnifying a party against its own strict liability unless the language of the agreement clearly and specifically shows this was the intent of the parties. Defendant accurately states the law in Illinois. (*Sorrentino v. Waco Scaffolding & Shoring Co.* (1976), 44 Ill. App. 3d 1055, 358 N.E.2d 1244.) However, even assuming the operating agreement does not require indemnification in this case, we believe the hold harmless clause in paragraph 13.1 of the sublease is sufficiently specific to require that defendant defend and indemnify Erie with respect to both of Brosmore's claims.

■ Erie's complaint should not have been dismissed unless it clearly appeared that under the pleadings, no set of facts could have been proved which would have entitled Erie to relief. (*J. J. Harrington & Co. v.*

*Timmerman* (1977), 50 Ill. App. 3d 404, 365 N.E.2d 721.) Also, the provisions for indemnity in paragraph 13.1 of the sublease were construed without the aid of extrinsic evidence by the trial court in dismissing plaintiff's complaint. Therefore, the meaning of paragraph 13.1 is a question of law for us to decide, unrestrained by the trial court's interpretation. *Zannis v. Lake Shore Radiologists, Ltd.* (1979), 73 Ill. App. 3d 901, 392 N.E.2d 126.

■ Paragraph 13.1 of the sublease states that defendant shall indemnify and hold Erie harmless from "any and all claims, losses, liabilities, demands, suits, judgments, or causes of action and all legal proceedings \* \* \* and any costs and expenses in connection therewith, including attorney's fees and expenses \* \* \* *which may be attributable to any defect in the Equipment arising from the material or any article used therein or from the design, testing or use thereof or from any maintenance, service, repair, overhaul, or testing of the Equipment, regardless of when such defect shall be discovered* \* \* \*." (Emphasis added.) Defendant contends that this language is not specific enough to require it to indemnify Erie because the term "strict liability" is never mentioned. However, an essential element of proof in a strict products liability action is that the product causing the injury contained a "defective condition [making it] unreasonably dangerous to the user \* \* \*." (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 619, 210 N.E.2d 182.) We cannot believe that this similarity between the essential allegation of a strict products liability action and paragraph 13.1's requirement that Erie be indemnified for liability for injuries attributable to a "defect" in the piggypacker is mere coincidence. We think it was the clear intent of the parties in paragraph 13.1 of the sublease that Erie be indemnified by defendant for any liability which might arise from a strict products liability claim such as Brosmore's.

We also believe that paragraph 13.1 of the sublease is specific enough to require defendant to indemnify Erie for Brosmore's other claim against Erie based on absolute liability under the Federal Safety Appliance Act. Our conclusion is supported by *Chicago, Rock Island & Pacific R.R. Co. v. Chicago, Burlington & Quincy R.R. Co.* (7th Cir. 1971), 437 F.2d 6, *cert. denied* (1971), 402 U.S. 996, 29 L. Ed. 2d 161, 91 S. Ct. 2173, where the court held that an indemnification clause which similarly covered injuries caused by "defects" in equipment required indemnity for absolute liability incurred under the Federal Safety Appliance Act. In *Rock Island,* the Burlington Railroad allowed the Rock Island Railroad to detour its trains over a branch line of Burlington, and Rock Island agreed to indemnify Burlington for liability which Burlington might incur if any injuries resulted from Rock Island trains being detoured, including injuries caused "by reason of defects in track, structures, or facilities

furnished by [Burlington] * * *." Due to a malfunctioning switching signal, which violated the Federal Safety Appliance Act, a Burlington train and a detouring Rock Island train collided, causing numerous injuries to people and property. Burlington sued Rock Island for indemnity for the absolute liability which Burlington owed to various injured persons under the Federal Safety Appliance Act, and the court held that their agreement was specific enough to require Rock Island to indemnify Burlington.

■■■ In holding that paragraph 13.1 of the sublease is specific enough to require defendant to defend and indemnify Erie, we are aware of the rule, cited by defendant, that an agreement purporting to indemnify a party against its own strict liability must be strictly construed against the indemnitee. However, strict construction of indemnity contracts "is a matter of degree and emphasis, dependent not only upon the clarity of the contract language, but the nature of the relationship established by the contract, and concern for public welfare and policy." (*Chicago, Rock Island & Pacific R.R. Co. v. Chicago, Burlington & Quincy R.R. Co.* (7th Cir. 1971), 437 F.2d 6, 9, *cert. denied* (1971), 402 U.S. 996, 29 L. Ed. 2d 161, 91 S. Ct. 2173.) As we explain below, our view that paragraph 13.1 of the sublease is sufficiently specific to require indemnification in this case does not conflict with public policy.

Defendant also maintains that to require it to indemnify Erie would be against public policy. Defendant states that one reason why strict liability is imposed on members of a product's distribution chain, including manufacturers, commercial distributors, sellers and lessors, is that they are able to spread the cost of an injury caused by the product through an adjustment in the price at which they sell or lease the product. Defendant urges, therefore, that it should not be required to indemnify Erie because defendant is not in a position to distribute the cost of Brosmore's injury since it is not in the business of selling or leasing piggypackers. Defendant further states that a second policy reason for imposing strict liability on members of the distribution chain below the manufacturer is that it gives them an incentive to pressure the manufacturer to provide safer products for consumers. Defendant maintains that it would be inconsistent with this policy to require it to indemnify Erie, because, defendant argues, it is further "downstream" from the manufacturer in the distribution chain than Erie and thus has no economic relationship with members of the distribution chain above Erie that could enable it to exert pressure on the manufacturer to produce safer piggypackers.

■■ Defendant has correctly identified cost spreading and the incentive to apply pressure to manufacturers for safer products as two reasons why strict liability is imposed on commercial lessors. (See *Peterson v. Lou*

*Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17, 329 N.E.2d 785; *Price v. Shell Oil Co.* (1970), 2 Cal. 3d 245, 466 P.2d 722, 85 Cal. Rptr. 178.) However, in order for a lessor effectively to spread the cost of an injury through an adjustment in the rental price of the injury-causing product, the lessor usually must lease the product on a regular basis. The well-pleaded facts in Erie's complaint and inferences therefrom favorable to Erie, taken as true, indicate that rather than leasing piggypackers on any kind of a regular basis, Erie itself simply leased two piggypackers from GATX, and then subleased the two piggypackers to defendant as part of Erie's ongoing business relationship with defendant, whereby defendant loads and unloads trailers on and off railroad flat cars at Erie's Chicago railroad yard.

It might be argued that Erie could pass on the cost of an injury caused by the piggypacker in the price it charges motor carriers who have their trailers transported on Erie's flat cars. However, it could also be argued that defendant, too, could pass on the cost of such an injury in the price it charges motor carriers for loading and unloading their trailers. Furthermore, neither argument is consistent with the theory of cost spreading as it applies to commercial lessors. As stated, cost spreading by a lessor contemplates passing on the cost of an injury through an adjustment in the rental price of the injury-causing product to its customers. Based on Erie's well-pleaded facts, Erie does not appear to be in an appreciably better position than defendant to spread the cost of a piggypacker-related injury in this manner. Even assuming, then, that it might be against public policy to allow indemnity for strict liability when the indemnitee's ability to spread the cost of an injury is appreciably greater than the indemnitor's, such an argument is inapplicable under Erie's well-pleaded facts.

A lessor can be strictly liable only if it is engaged in the business of leasing the injury-causing product. (*Siemen v. Alden* (1975), 34 Ill. App. 3d 961, 341 N.E.2d 713.) Whether Erie is engaged in the business of leasing piggypackers is an issue to be decided in Brosmore's suit, and nothing in our opinion should be construed as resolving that issue. We only decide here that, based on Erie's complaint, Erie does not appear to lease piggypackers on the kind of regular basis that would put it in an appreciably better position than defendant to spread the cost of an injury such as that of Brosmore.

Erie also does not seem to be in a significantly better position than defendant to apply pressure on the piggypacker manufacturer to produce a safer product. Erie technically is one step further up the distribution chain than defendant, but the well-pleaded facts, taken as true, indicate that Erie's and defendant's positions in the piggypacker chain of distribution are realistically the same, that is, both are lessees. Both Erie

and defendant appear to be corporate members of the "consumer" market for piggypackers, with roughly equivalent ability to influence the manufacturer to produce a safer product. Thus, even assuming that it might be against public policy to allow indemnity for strict liability when the indemnitee's position in the chain of distribution gives it substantially greater ability than the indemnitor to pressure the manufacturer to produce a safer product, this is not the situation presented under Erie's well-pleaded facts.

Defendant also argues that requiring it to indemnify Erie would conflict with the holding in *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 338 N.E.2d 857. In *Liberty*, the court held that the ultimate responsibility for a defective product is the manufacturer's and, therefore, a seller strictly liable to a buyer injured by a defective product may obtain indemnity from the manufacturer. Defendant urges that the policy of *Liberty* in favor of "upstream" indemnity against the manufacturer encourages the manufacturer to produce safer products. Defendant maintains that it would be inconsistent with this policy to permit a party below the manufacturer to obtain indemnity from a member of the distribution chain further downstream, instead of having to seek indemnity from the manufacturer. Furthermore, defendant argues, if indemnity is allowed to be sought downstream, then the manufacturer itself could contract to be indemnified by a party below it in the distribution chain, which would be against public policy because it would reduce the manufacturer's incentive to produce a safer product. In addition, defendant contends, permitting indemnity to be sought downstream will "open up an avenue" for manufacturers and others in the distribution chain to assert their superior bargaining position to limit their liability to consumers for injuries caused by their products. Defendant further urges that as the lessee of the piggypacker, it is the party intended to be protected by strict products liability and the Federal Safety Appliance Act and, therefore, it is contrary to public policy to permit Erie to obtain indemnity from defendant for either of Brosmore's claims against Erie.

Defendant's arguments might be persuasive in a different factual context, but are not pertinent to the facts pleaded by Erie. Under paragraph 13.1 of the sublease, defendant is specifically subrogated to any rights and remedies which Erie may have "upstream" against the piggypacker's manufacturer. Thus, if defendant has to indemnify Erie for a judgment in favor of Brosmore based on strict products liability, then defendant will be able to seek indemnity from the piggypacker manufacturer under the holding in *Liberty*. Therefore, defendant's argument, that requiring it to indemnify Erie will remove the pressure of

a possible indemnification suit against the piggypacker manufacturer, is unpersuasive.

Defendant's contention that a manufacturer should absolutely be prohibited from seeking contractual indemnity from a downstream member of the distribution chain because this would reduce the manufacturer's incentive to produce a safer product is also inapplicable to the facts pleaded by Erie. Erie is not the piggypacker's manufacturer. As stated, the well-pleaded facts, taken as true, indicate that Erie and defendant occupy relatively the same position, that is, both are lessees of an allegedly defective piggypacker which injured an individual. Assuming, then, the validity of defendant's argument (but see *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437), it is irrelevant in this case, and nothing in our opinion need be construed as approval of a contract by a manufacturer for indemnity against strict products liability by a party below it in the chain of distribution.

Defendant's argument that members of the distribution chain should not be allowed to assert their superior bargaining position to limit their liability to consumers is also inapposite to the facts pleaded by Erie. Notwithstanding that defendant urges it is the party intended to be protected by strict products liability and the Federal Safety Appliance Act, in reality the party to be protected in this case is the individual who was allegedly injured, Brosmore. Brosmore is not deprived of any remedies if defendant is required to indemnify Erie. The indemnity agreement only affects the rights of Erie and defendant, two corporations, vis-a-vis each other. It does not preclude Brosmore from suing and obtaining a judgment against Erie. Thus, there is no attempt here by a lessor of a product to deprive an injured individual of a remedy by means of an exculpatory clause or limitation of remedy provision in a lease. Our decision that it is not against public policy to require defendant to indemnify Erie need not, and should not, be construed as contrary to cases (see *Sipari v. Villa Olivia Country Club* (1978), 63 Ill. App. 3d 985, 380 N.E.2d 819; *Boyer v. Atchison, Topeka & Santa Fe Ry. Co.* (1967), 38 Ill..2d 31, 230 N.E.2d 173, *cert. denied* (1968), 390 U.S. 949, 19 L. Ed. 2d 1140, 88 S. Ct. 1038; *Haley v. Merit Chevrolet, Inc.* (1966), 67 Ill. App. 2d 19, 214 N.E.2d 347) holding that public policy precludes enforcement of an exculpatory or limitation of remedy clause in an agreement with an injured consumer. Moreover, because the indemnity agreement does not affect Brosmore's right to sue Erie, still another of the essential policy reasons for imposing strict products liability on members of the distribution chain, that the injured party have a reasonably available defendant (*Sweeney v. Max A. R. Mathews & Co.* (1968), 94 Ill. App. 2d 6,

236 N.E.2d 439, *aff'd* (1970), 46 Ill. 2d 64, 264 N.E.2d 170), is not disrupted if defendant must indemnify Erie for Brosmore's strict products liability claim.

The holding in *Chicago, Rock Island & Pacific R.R. Co. v. Chicago, Burlington & Quincy R.R. Co.* (N.D. Ill. 1969), 301 F. Supp. 72, *aff'd* (7th Cir. 1971), 437 F.2d 6, *cert. denied* (1971), 402 U.S. 996, 29 L. Ed. 2d 161, 91 S. Ct. 2173, supports the view that it is not against public policy to require defendant to indemnify Erie for Brosmore's claim under the Federal Safety Appliance Act, because requiring such indemnity will not deprive Brosmore of any remedy he may have under that Act. In that case the court found that the indemnity agreement between Burlington and Rock Island was not contrary to Federal Safety Appliance Act policy, in part because the agreement did not deprive the injured persons of any remedy "since either [Burlington] or [Rock Island] will have to pay any valid claims resulting from the disaster." (301 F. Supp. 72, 79.) The same reasoning applies here. The agreement between Erie and defendant is not contrary to Federal Safety Appliance Act policy, since either Erie or defendant will have to pay Brosmore if his claim is valid. Thus, defendant's citation to *Boyer v. Atchison, Topeka & Santa Fe Ry. Co.* (1967), 38 Ill. 2d 31, 230 N.E.2d 173, *cert. denied* (1968), 390 U.S. 949, 19 L. Ed. 2d 1140, 88 S. Ct. 1038, is inappropriate. *Boyer* involved an attempt by a railroad to avoid liability to an injured passenger under the Federal Safety Appliance Act by means of an exculpatory clause in a boarding pass issued to the injured passenger which was found to violate public policy, but which is clearly not analogous to the situation in this case.

We hold that paragraph 13.1 of the sublease is specific enough to require defendant to indemnify Erie for both of Brosmore's claims. Furthermore, even assuming defendant's policy arguments would preclude indemnification in a different factual context, such arguments are not applicable to Erie's well-pleaded facts. The judgment of the trial court dismissing Erie's complaint for failure to state a cause of action is, therefore, reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GOLDBERG, P. J., and CAMPBELL, J., concur.