KERR STEAMSHIP COMPANY *et al.*, Plaintiffs-Appellants, *v.* CHICAGO TITLE & TRUST COMPANY, Trustee, *et al.*, Defendants-Appellees.

First District (1st Division) No. 82—2384

Opinion filed December 27, 1983.

Thomas W. Johnston, Richard D. Worsek, and Margaret F. Woulfe, all of Chadwell & Kayser, Ltd., of Chicago, for appellant Data General Corporation.

Altheimer & Gray, of Chicago (Robert K. Blain, of counsel), for appellant Kerr Steamship Company.

Robert M. Tarnoff, Leonard A. Nelson, and Janice G. Janser, all of Schoenberg, Fisher & Newman, Ltd., of Chicago, for appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

The instant appeal arises out of a complaint for declaratory judgment brought by plaintiffs, Kerr Steamship Company (Kerr) and Data General Corporation (Data General), tenant and subtenant, respectively, of certain office space leased by defendants, Chicago Title & Trust Company (CT&T) and Fleetwood Realty Corporation (Fleetwood). The complaint sought a construction of the lease language pertaining to plaintiffs' additional rental obligation and a refund of additional rental plaintiffs alleged they were overcharged. Defendants filed a motion to dismiss with an alternative motion to strike. The trial court entered an order granting the motion to dismiss, and it is from this order that plaintiffs now appeal. We reverse and remand.

The record reflects as follows. On September 26, 1973, Kerr entered into a lease with defendants whereby Kerr agreed to rent 3,587 square feet of space in an office building at 200 West Monroe Street in Chicago. CT&T, as land trustee, was named as lessor under the lease, but Fleetwood was, and continues to be, the managing agent for the beneficiaries of the trust. The lease is a standard form, with various names, dates, dollar amounts and other descriptions applying to the demised premises typed in. Paragraph 4 of the lease is headed "BASE RENTAL" and provides for an annual rental of $29,234.05, payable in the amount of $2,436.17 per month. Paragraph 5 of the lease is headed "ADDITIONAL RENTAL" and provides that in addition to the fixed annual rental the tenant agrees to pay its *pro rata* share of certain building costs; the additional rental is to be determined pursuant to a formula reflecting increases in operating costs and taxes during subsequent lease years, compared with such costs and taxes in the base year, which is the first lease year. Specifically, paragraph 5A of the lease provides in pertinent part:

> "The Tenant hereby agrees to pay as additional rent 'Tenant's Prorata Share' of the amount by which yearly 'Building Operating Costs' incurred by the Landlord during each lease year during the term of this Lease, after the base year for determining such 'Building Operating Costs' as hereinafter defined, exceed 'Building Operating Costs' incurred by the Landlord during

said base year."

Paragraph 5B states in pertinent part:

"Tenant hereby agrees to pay to Landlord as further additional rent 'Tenant's Prorata Share' of any increase in real estate taxes payable during any Lease Year over and above the real estate taxes payable during the Base Year, being the First Lease Year."

Simultaneously with the execution of the lease, the parties executed a rider (the 1973 rider) which modified the lease in certain respects. The critical portion of the 1973 rider, for purposes of this litigation, is paragraph 2—B, which provides:

"The Additional Rental described in Paragraphs 5—A and 5—B of the Lease is limited to a maximum of four percent (4%) of the annual rental as described in Paragraph 4 of the Lease during any lease year period."

On January 23, 1975, the parties entered into an amendment to the original lease (the 1975 amendment) whereby additional space was rented and the annual rental was increased to its present level of $55,142.90. Paragraph 3 of the 1975 amendment reaffirms the limitations of the 1973 rider by providing that the provisions of the rider "relating to the limitation on Additional Rental to 4% of the Annual Rental shall refer to an annual rental of $55,142.90 per year." This annual rental multiplied by .04 yields $2,205.72.

Beginning in 1975, and continuing each year thereafter, Fleetwood invoiced Kerr for additional rental it claimed was due under the lease. For the years 1975 through 1980, Kerr paid invoices in the amounts of $351.53 for 1975, $2,495.35 for 1976, $4,905.99 for 1977, $6,822.62 for 1978, $9,391.61 for 1979 and $13,050.51 for 1980. Fleetwood also invoiced Kerr in the amount of $15,256.23 for the year 1981.

On December 19, 1978, Kerr entered into a sublease for the premises with Data General. The sublease was expressly consented to by CT&T in an agreement between it, Kerr and Data General dated February 26, 1979. The sublease specifically provided that the sublessee would be required to pay the additional rental required under paragraph 5 of the lease as amended by the 1973 rider.

Thereafter, for the years 1979 to 1981, upon being invoiced by Fleetwood for additional rental, Kerr, in turn, invoiced Data General. However, Data General refused to pay additional rental as invoiced on the ground that under the terms of the lease and sublease, additional rental could not exceed 4% of the annual rental, or $2,205.72 per year. Data General agreed to pay additional rental in the amount of

$2,205.72 per year for the period of time it had been in possession of the premises. Following Data General's refusal to pay the higher amount of additional rental, Kerr officials reviewed the lease provisions and determined that they had been invoiced by Fleetwood for additional rental on a cumulative basis, resulting in alleged overpayments of $25,637.48 for the period 1975 to 1980.

On January 11, 1982, Fleetwood sent a notice to Kerr demanding payment of additional rental for the year 1981 in the amount of $15,256.23. This amount was arrived at by multiplying $2,205.72 times six years, 11 months, which was the length of Kerr's right to possession. Kerr tendered $2,205.72. Fleetwood refused payment and sent Kerr a notice of default and termination of possession.

Plaintiffs subsequently filed a complaint seeking a declaratory judgment that Kerr is not liable for additional rental in an amount exceeding $2,205.72 per year for the duration of the lease, that Data General's right to possession not be disturbed as a result of Kerr's refusal to pay additional rental exceeding $2,205.72 per year, and that Kerr be awarded a judgment against defendants for $25,637.48, the amount it allegedly was overcharged for additional rental, plus interest.

In lieu of answering the complaint, defendants moved to dismiss or, in the alternative, to strike the complaint. Defendants' motion sought dismissal on grounds that paragraph 2—B of the 1973 rider provides for cumulative additional rental increasing annually by an amount of up to 4% of the annual rental. Alternatively, the motion sought to have Data General stricken as a party plaintiff, alleging it had no contractual privity with defendants and therefore lacked standing to sue. Finally, the motion sought to strike the portion of the complaint seeking a refund of Kerr's alleged overpayments; defendants contended that such payments, if erroneously made, had been made under a mistake of law, thereby precluding Kerr from obtaining a refund.

Following a hearing on the motion, the trial court entered judgment for defendants dismissing the complaint with prejudice and without leave to amend. Kerr and Data General appeal the dismissal order. We note that subsequent to the filing of this appeal, CT&T and Fleetwood filed two lawsuits involving the leased premises in the circuit court of Cook County against Kerr and Data General. One suit seeks eviction and unpaid rent, and the other seeks recovery of attorney fees incurred in the instant litigation. Kerr and Data General have moved to dismiss both actions.

The issues for our determination are: (1) whether the trial court

erred in dismissing the claim for declaratory judgment limiting plaintiffs' additional rental obligation to no more than $2,205.72 per year; (2) whether it is proper for this court to construe the lease and render an interpretation as to the plaintiffs' additional rental obligation; and (3) whether the trial court erred in dismissing Kerr's claim for a refund of alleged overcharges in additional rental.

## I

■ The first issue presented for review is whether the complaint states a cause of action for declaratory relief. To bring a cause of action for declaratory relief, the following two basic requirements must be met: first, an actual controversy must exist and, second, the plaintiff must be interested in the controversy. (*Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375-76, 362 N.E.2d 298; *Royal Globe Insurance Co. v. Aetna Insurance Co.* (1980), 82 Ill. App. 3d 1003, 1005-06, 403 N.E.2d 680.) An "actual controversy" exists if there is a legitimate dispute admitting of an immediate and definite determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof. An "interest in the controversy" means that the plaintiff must have a personal claim or right which is capable of being affected. (*Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375-76; *Royal Globe Insurance Co. v. Aetna Insurance Co.* (1980), 82 Ill. App. 3d 1003, 1005-06, 403 N.E.2d 680.) A complaint seeking a declaration of the rights of a landlord or tenant under a lease meets the foregoing requirements. See *Citizens National Bank v. Morman* (1979), 78 Ill. App. 3d 1037, 398 N.E.2d 49; *Dixie Square Thom McAn, Inc. v. Dixie Square Management Co.* (1977), 55 Ill. App. 3d 619, 370 N.E.2d 1256.

In the instant case, the plaintiffs' complaint alleged that a landlord-tenant relationship was created between defendants CT&T and Kerr when a written lease was signed September 26, 1973; that the premises covered by the lease were sublet to Data General on December 19, 1978, with the express consent of CT&T; that in early 1982, Fleetwood, as managing agent for the property, demanded payment of additional rental for 1981 in an amount nearly seven times greater than $2,205.72, the maximum allowable additional rental provided for in the lease; that the sublease between Kerr and Data General obligated Data General, the party in possession, to pay such additional rental as Kerr was obligated to pay; and that when Kerr refused to pay the amount demanded, Fleetwood served upon it a notice of default and termination of possession dated March 12, 1982, threatening

to terminate plaintiffs' right to possession of the premises.

It is axiomatic that a motion to dismiss admits all facts well pleaded and the reasonable inferences which may be drawn therefrom are taken as true for purposes of the motion. (*Horwath v. Parker* (1979), 72 Ill. App. 3d 128, 134, 390 N.E.2d 72.) A reviewing court should interpret the facts alleged in the complaint in the light most favorable to the plaintiff. (*Farns Associates, Inc. v. Sternback* (1979), 77 Ill. App. 3d 249, 252, 395 N.E.2d 1103.) The complaint should not be dismissed unless the pleadings disclose that no set of facts could be proved that will entitle the plaintiff to relief. *Patton v. T.O.F.C., Inc.* (1979), 79 Ill. App. 3d 94, 98, 398 N.E.2d 313.

In this case, the well-pleaded facts in plaintiffs' complaint, as set forth above, and the inferences therefrom favorable to plaintiffs, taken as true, adequately set forth a cause of action for declaratory relief. The allegations in the complaint disclose that an actual controversy is present in which both plaintiffs have a personal right which is capable of being affected. The complaint therefore should not have been dismissed.

 We further reject defendants' argument that Data General has no standing to sue and should be stricken as a party plaintiff. The record reveals that Data General, as sublessee, is presently in lawful possession of the premises which are the subject of the lease in dispute. Data General's possession has been threatened, both by express threats by defendants and by virtue of defendants' filing of litigation seeking payment of the controverted additional rental and eviction for failure to make such payments. Under these circumstances, Data General is clearly an "interested party" in the controversy and has standing to bring an action for declaratory relief. Ill. Rev. Stat. 1981, ch. 110, par. 2—701.

We also note that defendants admit that Data General might have standing if CT&T had agreed to Data General's sublease. Defendants allege that the record does not indicate such consent. This allegation is erroneous, however, since the record contains a copy of an agreement signed by CT&T approving the sublease.

## II

Plaintiffs ask this court to construe the lease and render a determination as to their additional rental obligation. It is plaintiffs' contention that the language of the lease limits their additional rental obligation to no more than $2,205.72 per year. Plaintiffs further seek a declaration that their right to possession not be disturbed for failure to pay additional rental in excess of that amount.

In Illinois, the same rules governing contract construction apply to the construction of written leases. (*Chicago Title & Trust Co. v. Southland Corp.* (1982), 111 Ill. App. 3d 67, 70, 443 N.E.2d 294.) In construing a lease, the principal function of this court is to give effect to the intention of the parties as ascertained from the language of the lease. (*American National Bank & Trust Co. v. Olympic Savings & Loan Association* (1978), 60 Ill. App. 3d 722, 724, 377 N.E.2d 255.) When the lease terms are clear and unambiguous, they must be enforced; a court cannot remake a lease and give the litigant a better bargain than he himself was satisfied to make. *Walgreen Co. v. American National Bank & Trust Co.* (1972), 4 Ill. App. 3d 549, 554, 281 N.E.2d 462.

■ Here, we find that the intent of the parties, as ascertained from the language of the lease, was to limit the amount of additional rental to no more than $2,205.72 per year. The language of the lease is unambiguous. Paragraph 2—B of the 1973 rider contains an express limitation on additional rental. It provides, in pertinent part:

> "Additional Rental *** is limited to a maximum of four percent (4%) of the annual rental as described in Paragraph 4 of the Lease during any lease year period."

The "annual rental" referred to in paragraph 2—B was $29,234.05 and covered 3,587 square feet. Subsequently, the parties increased the rental space pursuant to the 1975 amendment and, correspondingly, the additional rental cap also increased. However, paragraph 3 of the 1975 amendment expressly reaffirmed the 1973 rider provision limiting additional rental to 4% of the annual rental; the 1975 amendment specified that for this purpose, "Annual Rental shall refer to an annual rental of $55,142.90 per year." Construing the language of these two provisions together indicates that there is to be a flat cap on additional rental per year which is to be calculated by multiplying $55,142.90 by .04, equalling the amount of $2,205.72.

Defendants concede that the lease language is clear and unambiguous. Despite this concession, defendants ask this court to go beyond the language of the lease in order to construe the document in accordance with "commercial reality" to protect the landlord against inflation. Defendants argue that for the landlord to have contracted for anything other than cumulative annual increases would have been a bad business deal. However, under Illinois law it is improper to construe a lease in a manner inconsistent with its unambiguous language (*Young v. Illinois Athletic Club* (1923), 310 Ill. 75, 82-83, 141 N.E. 369; *Sol. K. Graff & Sons v. Leopold* (1981), 92 Ill. App. 3d 769, 771-72, 416 N.E.2d 275, particularly when the purpose is to retroactively

exculpate parties from their own poor bargain in failing to protect against inflation (*Springfield Marine Bank v. S. S. Kresge Co.* (S.D. Ill. 1960), 181 F. Supp. 448, 452, *aff'd* (7th Cir. 1960), 283 F.2d 119). The fact that one party fails to provide a sufficient hedge against inflation is not a reason to construe a lease in a manner inconsistent with its clear language. 181 F. Supp. 448, 452.

If defendants wanted the yearly escalations in additional rental to be cumulative, they should have expressly so provided in the lease. In the absence of such an express provision, this court cannot rewrite the contract entered into between the parties.

■ Defendants further argue that Kerr and Data General are estopped from asserting that the obligation to pay additional rental is limited to $2,205.72 because Kerr paid invoices in excess of that amount for five years. The foregoing argument, however, is contrary to long-standing Illinois Supreme Court precedent. (*Young v. Illinois Athletic Club* (1923), 310 Ill. 75, 141 N.E. 369.) In *Young v. Illinois Athletic Club*, the court held that where the terms of a lease are clear and unambiguous they must be enforced in accordance with their plain language, regardless of any prior construction of the parties. (310 Ill. 75, 83-84.) In *Young*, the lessor was reimbursed by the lessee for several years for Federal income taxes paid on rental income from the leased premises. When the lessee later declined to pay such taxes, the lessor brought suit seeking a judicial interpretation of the lease language pertaining to additional rental. The supreme court, in holding in the lessee's favor, specifically rejected the lessor's argument that the lessee was estopped from denying liability for the disputed taxes merely because it made prior payments of such taxes. 310 Ill. 75, 83-84.

Moreover, defendants' estoppel argument regarding the past conduct of the parties is undercut by their own prior actions. In their brief, defendants allege that since the inception of the lease Fleetwood has interpreted paragraph 2—B of the 1973 rider so that "[d]uring each successive lease year the maximum permitted escalation increased by another $2,205.72." Defendants reiterate their position as follows:

> "This Court should note that Defendants do not seek an interpretation of the lease which would allow a compounding of rent increments. Inflation has compound effects, but the 4% limitation refers to 4% of the annual rent during the Base Year—not 4% of the prior year's total rent. *The parties construed the lease as allowing only equal annual rent increments, and it is that construction which Defendants ask now.*" (Emphasis

added.)

After examining the amounts actually billed for additional rental, however, we find an inconsistency between defendants' argument and their conduct. The record reveals that in three of the six years for which Fleetwood invoiced Kerr for additional rental, the increase in additional rental over the previous year exceeded $2,205.72. Specifically, Fleetwood billed Kerr for additional rental in the amount of $4,905.99 in 1977, an increase of $2,410.64 from 1976; $9,391.61 in 1979, an increase of $2,568.99 from 1978; and $13,050.51 in 1980, an increase of $3,658.90 from 1979. Hence, defendants' billings for additional rental fail to reflect the limitation on increases they now claim was intended by the language of the 1973 rider.

■ We further reject defendants' argument that this court cannot definitively interpret the lease provisions in dispute, but must remand the matter to the trial court. The law does not require such a result. It is well established that absent ambiguity, the construction of a contract is purely a question of law and may be "determined by a reviewing court unrestrained by the trial court's judgment." *Hartwig Transit, Inc. v. Menolascino* (1983), 113 Ill. App. 3d 165, 168, 446 N.E.2d 1193; *Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 839, 422 N.E.2d 86; *Patton v. T.O.F.C., Inc.* (1979), 79 Ill. App. 94, 99, 398 N.E.2d 313.

Given the facts of the instant case and the law cited above, we hold that pursuant to the lease plaintiffs are not liable for additional rental in an amount exceeding $2,205.72 per year. Consequently, it follows from this holding that their right to possession not be disturbed for failure to pay additional rental in excess of $2,205.72 per year.

### III

Finally, we turn to Kerr's contention that the trial court erred in dismissing the portion of the complaint seeking a refund of excessive additional rental paid to defendants. The complaint alleged that Kerr paid invoices submitted by Fleetwood assuming that the invoices set forth the correct amount of additional rent due and owing, an assumption that turned out to be erroneous. Specifically, paragraphs 11 and 12 of the complaint alleged, in pertinent part:

> "11. Beginning in 1975, Fleetwood began invoicing Kerr for additional rental. Assuming that Fleetwood was properly invoicing Kerr in accordance with the provisions of the Lease, Kerr paid these invoices, totaling $351.53 for 1975, $2,495.35 for 1976, $4,905.99 for 1977, $6,822.62 for 1978, $9,391.61 for

1979 and $13,050.51 for 1980. Fleetwood has also invoiced Kerr in the amount of $15,256.23 for the year 1981. Kerr, in turn, invoiced Data General for 1981. Data General refused to pay the full amount invoiced, however, on the ground that under the terms of the Lease, the additional rental could not exceed 4% of the base rental of $2,205.72 per year.

12. Alerted by Data General's refusal to pay the higher amount, officials at Kerr reviewed the Lease provisions and determined that Fleetwood had in fact not been invoicing Kerr in the amount provided in the Lease, but rather had been invoicing Kerr for a cumulative amount which was in excess of 4% of the base year's rental as provided in the Lease."

Plaintiffs assert that the above allegations seek a refund of overpayments resulting from a mistake of fact. Defendants allege, however, that any overpayments resulted from a mistake of law; they argue that Kerr had full knowledge of the facts, but misapprehended its rights and obligations under the lease.

■ It is well established that money paid under a mistake of fact, which would not have been paid had the facts been known, may be recovered. (*Board of Education v. Holt* (1976), 41 Ill. App. 3d 625, 626, 354 N.E.2d 534.) However, money paid under a mistake of law cannot be recovered. (*Hartford v. Doubler* (1982), 105 Ill. App. 3d 999, 1001, 434 N.E.2d 1189.) In the case at bar, the determination as to why the payments were made is a factual determination not properly decided on a motion to dismiss. Accordingly, we remand the matter to the circuit court for a trial on the merits as to plaintiffs' right to recover overpayments of additional rental.

For the foregoing reasons, the judgment of the circuit court of Cook County dismissing the cause is hereby reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GOLDBERG and CAMPBELL, JJ., concur.