**MOSTEK CORPORATION, Appellant,**

v.

**CHEMETRON CORPORATION, Appellee.**

**No. 21128.**

Court of Appeals of Texas, Dallas.

Sept. 16, 1982.

Rehearing Denied Oct. 18, 1982.

Travis E. Vanderpool, Worsham, Forsythe & Samples, Dallas, for appellant.

Clayton E. Devin, Ray, Anderson & Shields, Dallas, for appellee.

Before ROBERTSON, CARVER and WHITHAM, JJ.

### TED Z. ROBERTSON, Justice.

This is a product liability case. Mostek Corporation, as buyer, and Chemetron, an Illinois corporation, as seller, entered into a contract for the sale of nitrogen.[1] Chemetron was to deliver nitrogen to Mostek by means of a bulk storage tank owned and maintained by Chemetron but located on the grounds at Mostek's manufacturing facilities. The nitrogen drawn by Mostek from Chemetron's bulk storage tank was found to contain an unidentified contaminate described as a "fine black powdery substance." As a result, Mostek was forced to close down the manufacturing facility in order to effectuate repairs. Thereafter, the nitrogen supply was again found to be contaminated. Mostek then shut down its manufacturing facilities and replaced the nitrogen transmission equipment and pipes.

Mostek sought damages for breach of warranty and negligence as well as in strict tort. Chemetron's motion for summary judgment was granted. We affirm as to warranty and negligence. We reverse and remand for trial on strict tort liability.

By its summary judgment evidence, Chemetron alleged that notwithstanding Mostek's ability to establish the essential elements of its causes of action, Chemetron was insulated from liability by the limitation of remedies provisions of the contract. Paragraph 8 of the contract between Mostek and Chemetron provided for a limitation of warranties:

> Products supplied under this Agreement shall be of a purity of 99.5% or better and shall be commercially dry. Any non-conforming product may be rejected by the Buyer at time of delivery, and Seller shall replace such product at no cost to Buyer. SELLER MAKES NO OTHER WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTY OF MERCHANTABILITY.

Paragraph 21 provided for a limitation of remedies:

> 21. Seller shall in no event be liable to Buyer or to any person who shall purchase from Buyer or use any products supplied pursuant to this agreement for damages of any kind, including, but not limited to, direct, indirect, special or consequential damages or loss of production or loss of profits resulting from any cause whatsoever, including, but not limited to, any delay, act, error or omission of Seller, and Seller's sole liability shall be to replace any products covered by this agreement which do not conform to the specifications set forth herein at the time of delivery by Seller. If Buyer fails to notify Seller of any nonconforming products within five days of delivery, Buyer shall have no remedy.

Paragraph 26 provided that:

> The interpretation and performance of this Agreement shall be construed in accordance with and governed by the laws of the State of Illinois.

The trial court, construing Illinois law as per the contractual choice of law in paragraph 26, determined that the limitation of remedies provisions of paragraphs 8 and 21 effectively limited Mostek's recovery to replacement of the defective nitrogen. We conclude that the trial court's application of Illinois law was correct, as was its judg-

---

1. The contract was subsequently amended. However, the contractual provisions pertinent here were not altered.

ment that under Illinois law the contract effectively limited Mostek's recovery for breach of warranty or negligence to replacement of the nitrogen. We hold, however, that the limitations of remedies provisions of paragraphs 8 and 21 should not be enforced insofar as they limit recovery in strict tort. Consequently, we reverse and remand as to this element of Mostek's causes of action.

It is elementary that "[w]hen a defendant moves for summary judgment, he accepts the burden of establishing that *no genuine issues exist as to any material facts, and that he is entitled to judgment as a matter of law as to any of plaintiff's theories of recovery for which he seeks summary judgment." American Petrofina Co. v. Crump Business Forms, Inc.,* 597 S.W.2d 467, 470 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). In reviewing a summary judgment record, this court must apply the following rules:

1) The movant for summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

2) Evidence favorable to the non-movant will be taken as true;

3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Wilcox v. St. Mary's University,* 531 S.W.2d 589, 592–93 (Tex.1975). Although a motion for summary judgment does not shift the burden of proof imposed by the parties' own pleadings, *Cloyd v. Champion Home Builders Co.,* 615 S.W.2d 269, 271 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.), every reasonable inference is indulged in favor of the non-movant. Accepting Mostek's allegations as true, Chemetron had the option of conclusively showing: 1) that a fact required to establish at least one element necessary to each of Mostek's causes of action did not exist, *American Petrofina,* 597 S.W.2d at 470; or, 2) conclusively showing that notwithstanding Mostek's ability to prove its claims, Chemetron was insulated from liability by some defense. Chemetron

elected the second course of action. With this in mind, we must discern what facts, if proved by Chemetron, would have precluded Mostek's recovery. To do so, of course, it is essential to determine whether the substantive law of Texas applies or whether the parties' contractual selection of Illinois law is to be honored.

Section 1.105(a) of the Texas Business and Commerce Code provides in part:

(a) [W]hen a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties.

*Id.* § 1.105(a) (Vernon Supp.1982).

The official Code Comment to section 1.105(a) states that "ordinarily, the law chosen must be that of a jurisdiction where a significant enough portion of the making or performance of the contract is to occur or occurs." Tex.Bus. & Com.Code Ann. § 1.105(a) Comment 1 (Vernon 1968). The Comment continues, "[i]n general, the test of 'reasonable relation' is similar to that laid down by the Supreme Court in *Seeman v. Philadelphia Warehouse Co.,* 274 U.S. 403 [47 S.Ct. 626, 71 L.Ed. 1123] (1927)."

*Seeman* involved an action by a Pennsylvania creditor for conversion of personal property pledged to it as security for a loan made to a New York debtor. The New York debtor claimed the loan was usurious, a question which depended upon whether New York or Pennsylvania law was to be applied to the transaction. The contract provided that Pennsylvania law was to be applied. The Supreme Court upheld the validity of the agreed upon choice of law emphasizing that the creditor was a Pennsylvania corporation, that the loan agreement was entered into in Pennsylvania, and that payment was to be made in Pennsylvania. The court stated:

Here respondent, organized and conducting its business in Pennsylvania, was subject to the laws of that state, and had a legitimate interest in seeking their benefit.

*Id.* at 408–09, 47 S.Ct. at 627–628; *see Woods-Tucker Leasing Corp. v. Hutcheson-Ingram Development Co.,* 642 F.2d 744, 751 (5th Cir.1981);[2] *Hi Fashion Wigs Profit Sharing Trust v. Hamilton Investment Trust,* 579 S.W.2d 300, 302 (Tex.Civ.App.— Eastland 1981, no writ); *cf. Securities Investment Co. v. Finance Acceptance Corp.,* 474 S.W.2d 261, 272 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.).

■ The record before us reflects that Chemetron is an Illinois corporation with its headquarters and principal place of business located in Chicago, Illinois. Although Chemetron had an office in Texas, the contract made the basis of this suit was prepared by the Chicago office and the permanent records concerning the delivery of nitrogen to Mostek were kept in Chicago. Finally, the central engineering department responsible for investigating customers' complaints was located in Chicago.

■ Chemetron, organized and conducting its business pursuant to the laws of Illinois, had a reasonable and legitimate interest in seeking the benefit of those laws. While it is true that deliveries of the nitrogen occurred in Texas, it is equally clear that the parties' choice of law was not made in order to avoid "at will, fraudulently or capriciously," the law of the State of Texas which would otherwise have governed the transaction. *See Seeman v. Philadelphia Warehouse Co.,* 274 U.S. 403, 408– 09, 47 S.Ct. 626, 627–628, 71 L.Ed. 1123 (1927). For these reasons, we hold that the transaction bore reasonable relation to the State of Illinois and that the parties' choice of law satisfies the "reasonable relation" requirement of the Code. *See generally id.* at 408–09, 47 S.Ct. at 627–628; *First Commerce Realty Investors v. K–F Land Co.,* 617 S.W.2d 806, 807–09 (Tex.Civ.App.—

Houston [14th Dist.] 1981, writ ref'd n.r.e.). *See also* Tex.Bus. & Com.Code Ann. § 1.105 Comment 1 (Vernon 1968). We now consider the effect of the disclaimer of warranty and limitation of remedies provisions of the contract under Illinois law.

The Illinois Uniform Commercial Code provides:

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

Ill.Rev.Stat. ch. 26, § 2–316(2) (1963). It is abundantly clear that the disclaimer contained in paragraph 8 complied with the requirements of § 2–316(2) of Illinois' Commercial Code. The disclaimer was written and conspicuous, thereby effectively disclaiming the implied warranty of fitness for a particular purpose. *See Imperial Stamp and Engraving Co. v. Bailey,* 82 Ill.App.3d 835, 38 Ill.Dec. 206, 208, 403 N.E.2d 294, 296 (1980). Moreover, by mentioning merchantability, the disclaimer effectively disclaimed the implied warranty of merchantability. *See Schultz v. Jackson,* 67 Ill.App.3d 889, 24 Ill.Dec. 395, 398, 385 N.E.2d 162, 165 (1979). We agree with the trial court's conclusion that the agreement of the parties effectively limited the warranty to a warranty that the nitrogen would be of a purity of 99.5% or better and commercially dry. This disclaimer is not against the public policy of Texas,[3] and should therefore be enforced by the courts.

2. The court quotes The Uniform Commercial Code and The Choice of Law, 1969 Duke L.J. 623, 628 (1969) where it states:

> When the comment reference to Seeman is combined with the statutory policy favoring party autonomy, the result is that the parties' choice should be upheld unless the transaction lacks a normal connection with the state whose law was selected. Only when it is

shown that the contract did not occur in the normal course of the transaction, but was contrived to validate the parties' choice of law, should the relationship be held unreasonable; in other cases the clause should be upheld.

3. *See W.R. Weaver Co. v. Burroughs Corp.,* 580 S.W.2d 76, 80–81 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.), *see also Henderson v. Ford*

Chemetron did not seek to defeat Mostek's underlying causes of action by its summary judgment evidence. Rather, as noted above, it argued that its liability for breach of warranty was limited by the limitation of remedies provisions of paragraphs 8 and 21 of the contract. Chemetron further argued that its tort liability was limited by the limitation of remedies provisions of paragraph 21 of the contract. For this reason, we shall take as true the non-movant's allegations that a breach of the warranty of purity did occur and that Chemetron was liable to Mostek in negligence and strict tort, *Wilcox v. St. Mary's University,* 531 S.W.2d 589, 592–93 (Tex.1975), and focus our analysis upon the limitation of remedies provisions of paragraphs 8 and 21.

Section 2–719 of the Illinois' Uniform Commercial Code provides:

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

(a) The agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limita-

tion of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Ill.Rev.Stat. ch. 26, § 2–719 (1963). With this as our guidepost, it is abundantly clear that paragraph 21 of the contract, when read in light of paragraph 8 of the contract, effectively limited Mostek's recovery for breach of warranty to replacement of the defective product. *See Gates Rubber Co. v. USM Corp.,* 508 F.2d 603, 617 (7th Cir.1975). *See also J.D. Pavlak, Ltd. v. William Davies Co.,* 40 Ill.App.3d 1, 351 N.E.2d 243, 245 (1976).

■ Texas recognizes the validity of a limitation of remedies provision in a contract for the sale of goods. Section 2.719 of Texas Uniform Commercial Code provides that the parties may limit or alter the measure of damages recoverable under the Code. Tex.Bus. & Com.Code Ann. § 2.719(a)(2) (Vernon 1968). Texas courts construing this provision have upheld limitations of remedies provisions similar to those before us where the cause of action was based upon breach of warranty. *See Henderson v. Ford Motor Co.,* 547 S.W.2d 663, 667–68 (Tex.Civ.App.—Amarillo 1977, no writ); *Lankford v. Rogers Ford Sales,* 478 S.W.2d 248, 250–51 (Tex.Civ.App.—El Paso 1972, writ ref'd n.r.e.). For this reason, we conclude that the limitation of remedies for breach of warranty is not inconsistent with the public policy of this state and should be enforced. The more difficult question with which we are presented deals with the effect of paragraph 21 on Chemetron's liability for negligence and liability in strict tort.

■ Our review of the reported decisions of Illinois convinces us that Illinois does not adhere to the "express negligence"

*Motor Co.,* 547 S.W.2d 663, 665–68 (Tex.Civ. App.—Amarillo 1977, no writ).

Texas' Uniform Commercial Code contains language identical to that contained in § 2–316(2) of the Illinois version. Tex.Bus. & Com.Code Ann. § 2.316(b) (Vernon 1968).

Texas courts will not enforce a contractual choice of law when the law chosen offends the

public policy of the State of Texas. *First Commerce Realty Investors v. K–F Land Co.,* 617 S.W.2d 806, 808–09 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *see Fidelity Mutual Life Association v. Harris,* 94 Tex. 25, 34, 57 S.W. 635, 638 (1900).

rule. Generally, under Illinois law, parties are free to disclaim or limit liability for negligence notwithstanding a failure to include the word negligence in the operative provisions of the contract. *See Westinghouse Electric Elevator Co. v. LaSalle Monroe Bldg. Corp.,* 395 Ill. 429, 70 N.E.2d 604, 606–07 (1946). *See also Berwind Corp. v. Litton Industries, Inc.,* 532 F.2d 1, 5 (7th Cir.1976); *Gates Rubber Co. v. USM Corp.,* 508 F.2d 603, 616–17 (7th Cir.1975). Nevertheless, three prerequisites must be met before an exculpatory clause will be deemed to defeat a claim. *Berwind,* 532 F.2d at 4. First, the exculpatory clause will be strictly construed against the person seeking to avoid liability. *Id.* at 4. Second, every intendment is construed against the party seeking immunity from liability. *Id.* at 4. Third, the clause must spell out the intention of the parties with great particularity. *Id.* at 4. After careful review of *Gates* and *Berwind* decisions, we have concluded that paragraph 21 of the contract between Mostek and Chemetron effectively limited Mostek's remedy for negligence to replacement of the product.

Paragraph 21 specifically states:

"Seller shall in no event be liable to buyer ... for damages of any kind ... resulting from any cause whatsoever, including, but not limited to, any delay, act, error or omission of seller, and seller's sole liability shall be to replace any products covered by this agreement which do not conform to the specifications set forth herein at the time of delivery by seller."

Mostek and Chemetron were sophisticated commercial entities with prior experience in this type of transaction. The provisions of the contract were unequivocal and there is no allegation of disparate bargaining positions or adhesion. We agree with the trial court that under Illinois law, the limitation of remedies provisions of the contract effectively limited Mostek's recovery in negligence to replacement of the product. *See Westinghouse Electric Elevator Co. v. LaSalle Monroe Bldg. Corp.,* 395 Ill. 429, 70 N.E.2d 604, 606–07 (1946).

Generally, agreements exempting a party from liability for future negligence are recognized as valid and effective by the courts of Texas. *Crowell v. Housing Authority of Dallas,* 495 S.W.2d 887, 889 (Tex.1973). Like Illinois, Texas does not follow the "express negligence" rule. *See Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co.,* 490 S.W.2d 818, 822 (Tex.1972); *Spence and Howe Construction Co. v. Gulf Oil Corp.,* 365 S.W.2d 631, 636–38 (Tex.1963). *See also Joe Adams & Son v. McCann Construction Co.,* 475 S.W.2d 721, 723–24 (Tex.1972). However, like Illinois, Texas requires that the exculpatory language be unequivocal. *See Fireman's Fund,* 490 S.W.2d at 822. After careful review of the entire contract and a canvass of the pertinent Texas decisions, we are of the opinion that this limitation of remedies for negligence does not violate the public policy of this state and should be enforced. *See Allright, Inc. v. Elledge,* 515 S.W.2d 266, 267 (Tex.1974).

As to Mostek's cause of action in strict tort, we have determined that Illinois does not recognize a contractual disclaimer of strict tort liability. *See Sipari v. Villa Olivia Country Club,* 63 Ill.App.3d 985, 20 Ill.Dec. 610, 614–15, 380 N.E.2d 819, 823–24 (1978); *Haley v. Merit Chevrolet, Inc.,* 67 Ill.App.2d 19, 214 N.E.2d 347, 352–53 (1966). *See also Patton v. T.O.F.C., Inc.,* 79 Ill. App.3d 94, 34 Ill.Dec. 638, 644–645, 398 N.E.2d 313, 319–20 (1979). For this reason, the trial court erred in dismissing Mostek's strict liability cause of action.[4] Finally, we must consider Mostek's claim that the limitation of remedies provision of the contract failed of its essential purpose.

As noted above, we take as true Mostek's allegations that Chemetron supplied defective nitrogen on two occasions. In its response in opposition to Chemetron's motion for summary judgment, Mostek pled that the limitation of remedies provision had failed of its essential purpose. Mostek claims that it should therefore be allowed to recover damages for breach of warranty as

4. Of course, we express no opinion on the merits of Mostek's claim.

provided in the Illinois Uniform Commercial Code. *See* Ill.Rev.Stat. ch. 26, § 2–719(2) (1963). We are of the opinion that Mostek's response in opposition to Chemetron's motion for summary judgment and the responses to interrogatories and admissions on file in this case raise a genuine issue of material fact as to whether the limitation of remedies failed of its essential purpose. *Cf. Riley v. Ford Motor Co.,* 442 F.2d 670, 673 (5th Cir.1971) (remedy fails of its essential purpose when warrantor fails to correct defect within a reasonable time or after multiple attempts); *Beal v. General Motors Corp.,* 354 F.Supp. 423, 426 (D.Del.1973). Chemetron was given adequate opportunity to correct the defects in the product for which it may have been culpable. If, in fact, Mostek is able to establish that Chemetron did breach the warranty of purity on numerous occasions, we hold that this would be some evidence that the limitation of remedies had failed of its essential purpose.

We are of the opinion that the trial court was correct in its decision to apply Illinois law. We further concur with the trial court's conclusion that the product was only warranted to be of the stated purity and that Mostek's recovery for breach of warranty is limited to replacement of the product. If, however, Mostek is able on remand to establish that the limitation of remedy failed of its essential purpose, Mostek should be allowed recovery for breach of warranty as provided in the Illinois Uniform Commercial Code.

We affirm the trial court's judgment insofar as the limitation of remedy for negligence is concerned. We reverse and remand with instructions; 1) that paragraph 21 of the contract is not to be enforced by the court as a limitation of remedy for Chemetron's liability in strict tort; and, 2) that Mostek be given an opportunity to establish that the limitation of remedy failed of its essential purpose.

Affirmed in part, reversed and remanded in part.