

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00022-CV
_____

PLEASANT GROVE INDEPENDENT SCHOOL DISTRICT, Appellant

V.

FIELDTURF USA INC. AND ALTECH, INC., Appellees

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 15C1318-102

Before Morriss, C.J., Stevens and van Cleef, JJ.
Opinion on Remand by Chief Justice Morriss

OPINION ON REMAND

To build a new football stadium, Pleasant Grove Independent School District contracted with prime contractor Altech, Inc., whose subcontractors included FieldTurf USA, for the manufacture and provision of an artificial-turf field bearing the product name Prestige XM-60, with Duraspine fibers. Though the field's life was purported to be ten to twelve years and was warranted for eight years, the field started degrading within five years. A dispute arose over the turf, resulting in various claims among the District, Altech, and FieldTurf. Notwithstanding explicit contract language limiting FieldTurf's warranty to repair or replace defective turf, the District rejected FieldTurf's proposal to repair the field. Instead, the District decided to install a new field and then maintained at trial that it was entitled to damages measured by the turf's replacement cost. Fatally to its warranty claim, the District stood by that position by not introducing evidence for the statutorily sanctioned measure of damages.

The trial court granted summary judgment in favor of Altech and partial summary judgment in favor of FieldTurf as to the District's fraud claims. The District's warranty claim against FieldTurf proceeded to trial, where the jury found that FieldTurf breached its warranty and awarded the District $175,000.00 in actual damages. Both the District and FieldTurf appealed to this Court. *See Pleasant Grove Indep. Sch. Dist. v. FieldTurf USA*, 634 S.W.3d 84 (Tex. App.—Texarkana 2020), *rev'd in part*, *FieldTurf USA v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829 (Tex. 2022).

On appeal, we reversed Altech's summary judgment against the District as to the breach of warranty claim and affirmed FieldTurf's partial summary judgment against the District.

2

*Pleasant Grove Indep. Sch. Dist.*, 634 S.W.3d at 95. Because we remanded the case for a new trial, we addressed neither the District's two points of error regarding the measure of damages and its motion for a new trial on attorney fees nor the five points of error raised in FieldTurf's cross-appeal regarding its motion for judgment notwithstanding the jury's verdict. *Id.* at 100. The parties appealed to the Texas Supreme Court, which affirmed our judgment as to the District's fraud claims, reversed our judgment in part, reinstated the trial court's award of summary judgment in favor of Altech, and reversed our decision to remand the case for a new trial, remanding it back to us so that we might consider the previously unaddressed points of error. *FieldTurf USA*, 642 S.W.3d 829.

Here, on remand, we address FieldTurf's challenges to the jury's verdict against it on the warranty claim. We also address the District's argument on appeal that the jury was erroneously instructed on the measure of damages.

We reverse the jury's award of damages and render a take-nothing judgment in favor of FieldTurf because, (1) under the clear language of the warranty, repair and replacement were the exclusive remedies for breach of warranty; (2) the jury was properly instructed on damages; and (3) even if the District pled, proved, and obtained a jury finding that the warranty failed of its essential purpose, it failed to produce evidence of damages.

> *(1)    Under the Clear Language of the Warranty, Repair and Replacement Were the Exclusive Remedies for Breach of Warranty*

FieldTurf contends that the District was not entitled to recover money damages and that the trial court should have granted its motion for judgment notwithstanding the verdict (JNOV), because the District's sole remedy under the warranty and the Texas Uniform Commercial Code

3

(UCC) was repair or replacement of the field. To put this in its full context, we offer the background of this case.

When the District decided to build a new football stadium and install a synthetic-turf field, it contracted with Altech to be the general contractor. Among the subcontractors was FieldTurf. In 2009, based on representations made by FieldTurf representatives, the District's governing board selected FieldTurf's Prestige XM-60 field with Duraspine fiber as its new synthetic-turf field. The turf materials were obtained from FieldTurf and were installed onto the field by a separate subcontractor.

The FieldTurf field was installed in the new football stadium between August and October 2009. FieldTurf provided an eight-year limited warranty on the artificial-turf field. FieldTurf's limited warranty for the field provided:

> FIELDTURF warrants that if Prestige XM-60 for football, soccer, synthetic turf proves to be defective in material or workmanship, resulting in a loss of pile height greater than 50%, during normal and ordinary use of the Product for the sporting activities set out below or for any other uses for which FIELDTURF gives its written authorization, within 8 years from the date of completion of installation, FIELDTURF will, at FIELDTURF's option, either repair or replace the affected area without charge to the extent required to meet the warranty period (but no cash refunds will be made) . . . . This warranty is limited to the remedies of repair or replacement, which shall constitute exclusive remedies available under this warranty, and all other remedies or recourses which might otherwise be available are hereby waived by [the District]. FIELDTURF will have no other obligations or liability for damages arising out of or in connection with the use or performance of the product including but without limitation, damages for personal injury or economic losses.

The warranty period officially began on or about April 14, 2010.

Around June 2014, the District personnel notified FieldTurf that the field was degrading and its fibers were becoming brittle, causing color loss and loss of traction. In July, Ross Wittig,

4

a FieldTurf representative, personally walked the field and took photos of it. During Wittig's subsequent "off the record" conversation with Josh Gibson, who had, in 2014, replaced Davis as coach and athletic director, and Steve Shatto, the District's maintenance director, Wittig admitted that the field was "in bad condition" and that

> FieldTurf ha[d] multiple fields that [were] failing. They[ were] failing at -- at a large rate all over the United States. There [were] some schools that [were] getting these fields replaced; that they[ had] just started turning down, you know, people. And so his advice to us was that the squeakiest wheel -- those were his words: the squeakiest wheel [was] going to get attention, and -- and, you know, we needed to raise a fuss about our product.

Wittig emailed FieldTurf regarding the field's condition, confirming to FieldTurf that "[t]here [were] some safety concerns," that the gold-colored fibers in the end zones "ha[d] about disappeared," that "[m]any inlays [were] separating," and that the field's white lines were beginning to disappear.

Because the District continued to complain about the field's condition, Todd Bresee, FieldTurf's designated Duraspine field evaluator, inspected the field in September 2014. In Bresee's resulting report, he concluded that the field was "showing signs of accelerated wear in all the fiber colors" between the football field's numbers, that there were "large amounts of broken fiber on the surface," and that the "gold fiber [was] broken completely down to the top of the infill." Bresee stated that the green fibers, which comprised most of the field, were in poor or fair condition, that all the gold fibers were in poor condition, that only the black fibers in the end zone and in the field logo were found to be in good condition, and that none of the fibers were found to be in very good or excellent condition. His report to FieldTurf included the following comments:

5

> The field has a large amount of broken fiber on it. The AD showed me pics of this fiber clogging up his players cleats when the field is wet. Owner is also upset with the amount of fiber that has to be cleaned out of the locker room each day. I was on my knees taking pictures and when I stood up I was covered with the green field fiber. Owner took pics of my pants covered with the fiber. This field needs to be cleaned and loose fiber removed.

Gibson testified that the field was the worst he had ever seen, that it was covered in broken and split fibers, and that it had become a safety issue due to the layer of broken fibers making the field slippery. Gibson testified that Bresee agreed with his conclusion that the field was in "bad shape."

During the last three months of 2014, the District complained to FieldTurf about the field's premature wear and degradation and demanded that FieldTurf replace the field under warranty. In January 2015, FieldTurf Customer Service Director, Julie Paquin, responded to the District's requests with an email that claimed that FieldTurf's inspection of the field found it to be in "fair/good condition," that the field problems were merely cosmetic and presented no playability or safety hazards, and that the field merely needed a "laymor scrape" process that would remove some of the rubber infill at the base of the fibers to expose more of the fibers. The District rejected the laymor scrape as an acceptable solution because it would improve the cosmetic look of the field for only a short period of time. Rather, the District demanded that FieldTurf honor the warranty and replace the field. In FieldTurf's February 12, 2015, response to the District's demands, FieldTurf refused to replace the field, claiming that even though the fibers were degraded, the field was not in poor enough condition to require replacement because the fiber degradation was "predominately a problem of appearance." In September 2015, after its further requests for replacement were denied, the District chose to fight for its turf, filing a

claim against Altech for breach of warranty and claims against FieldTurf for fraud and breach of warranty. The District subsequently removed and replaced the field at its own expense.

The trial court granted summary judgment in favor of Altech and a summary judgment in favor of FieldTurf as to the District's fraud claims. The District's remaining claim for breach of warranty against FieldTurf proceeded to trial, where the jury found that FieldTurf breached its warranty and awarded the District $175,000.00 in actual damages. FieldTurf sought a JNOV on the basis that the District was not entitled to damages for breach of warranty. The trial court denied FieldTurf's motion for a JNOV.

Having reviewed the above facts and procedural history, we turn to FieldTurf's issue regarding the trial court's denial of its motion for JNOV as to the District's warranty claim.

We review a motion for JNOV under a no-evidence standard of review, meaning we "credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009) (citations omitted). We will uphold the jury's finding if more than a scintilla of competent evidence supports it. *Id.* "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.*

The interpretation of an unambiguous contract is a question of law that we review de novo using well-settled contract-construction principles. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018). We presume that parties intend what the words in their contract say, and

7

we interpret contract language according to its plain, ordinary, and generally accepted meaning unless the contract directs otherwise. *Id.* at 763–64.

Under Section 2.714 of the UCC, a buyer who has accepted nonconforming goods that breach a given warranty may recover money damages in the amount of "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." TEX. BUS. & COM. CODE ANN. § 2.714(b). However, parties may agree to limit the remedies available for breach of warranty. *See Weaver v. Jamar*, 383 S.W.3d 805 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Mostek Corp. v. Chemetron Corp.*, 642 S.W.2d 20, 25 (Tex. App.—Dallas 1982, writ dism'd by agr.). Section 2.719(a) provides that, subject to certain other provisions, the parties may agree to limit the buyer's remedy exclusively to "repair and replacement of non-conforming goods or parts." TEX. BUS. & COM. CODE ANN. § 2.719(a). Under that section,

> (1)  the agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

> (2)  resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

TEX. BUS. & COM. CODE ANN. § 2.719(a). Limited and exclusive remedy provisions are enforceable under Texas law. *See New Braunfels Indep. Sch. Dist. v. FieldTurf USA*, No. 07-20-00308-CV, 2021 WL 5277135, at \*5–6 (Tex. App.—Amarillo Nov. 12, 2021, pet. denied) (mem. op.); *Mostek Corp.*, 642 S.W.2d at 25; *Ganda, Inc. v. All Plastics Molding, Inc.*, 521 S.W.2d 940 (Tex. App.—Waco 1975, writ ref'd n.r.e.).

8

Here, the applicable warranty language stated:

> [At] FieldTurf's option, [it will] either repair or replace the affected area without charge, to the extent required to meet the warranty period (but no cash refunds will be made). . . . This warranty is limited to the remedies of repair or replacement, which shall constitute the exclusive remedies available under this warranty, and all other remedies or recourses which might otherwise be available are hereby waived by [the District]. . . . FieldTurf will have no other obligations or liability for damages arising out of or in connection with the use or performance of the product including but without limitation, damages for personal injury or economic losses.

FieldTurf contends that, as per Section 2.719(a), the parties limited the remedies available for breach of warranty, and under the express and unambiguous terms of the warranty, the District was limited to, at FieldTurf's option, the remedies of repair or replacement of the field and, therefore, could not obtain money damages on its claim for breach of warranty

If the parties intend for the stated remedy to describe the sole remedy under the contract, "this must be clearly expressed." *Equistar Chems., L.P. v. ClydeUnion DB, Limestone*, 579 S.W.3d 505, 522 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). Here, under the plain language of their contract, the District and FieldTurf agreed that repair or replacement were the "exclusive" and "sole" available remedies for a breach of warranty and that the District "waived" any and all other remedies. Similar contractual language has been held to establish an exclusive or sole remedy. The warranty language in a recent case involving the same product was identical to the language present in this case, and the court of appeals held that the New Braunfels school district's claim for breach of warranty was limited to the exclusive remedies of repair or replacement of the turf field installed for that District. *See New Braunfels Indep. Sch. Dist.*, 2021 WL 5277135, at *5–6. In *PPG Industries, Inc. v. JMB/Houston Centers Limited Partnership*, the

9

Texas Supreme Court held that the contractual warranty was limited to replacement where the warranty provided: "Pursuant to this limited warranty, [seller] will only supply a new unit, and no labor, installation or special or consequential damages are included. . . . [Seller] makes no other warranty." *PPG Indus., Inc. v. JMB/Houston Ctrs. Ltd. P'ship*, 146 S.W.3d 79, 98, 101 (Tex. 2004). Similarly, a warranty stating, "Seller shall in no event be liable to buyer . . . for damages of any kind . . . resulting from any cause whatsoever . . . and seller's sole liability shall be to replace any products covered by this agreement which do not conform to the specifications set forth herein" was held to provide a valid, exclusive remedy of replacement. *See Mostek Corp.*, 642 S.W.2d at 26.

The District concedes that "the parties contracted for the express warranty for repair or replacement of a defective field." However, the District also argues that its claim for breach of warranty is not limited to, as FieldTurf contends, specific performance—the actual repair or replacement of the field. Section 2.719 states that, through a limited warranty, the parties may "limit or alter the *measure of damages recoverable* . . . as by limiting the buyer's remedies . . . to repair or replacement of non-conforming goods or parts." TEX. BUS. & COM. CODE ANN. § 2.719(a)(1) (emphasis added). The District contends that the warranty language means that it and FieldTurf agreed to change the "measure of damages recoverable" from Section 2.714's default measure based on the difference in market value to "the *cost* to repair or replace the field." TEX. BUS. & COM. CODE ANN. § 2.714 (emphasis added). However, the plain contract language does not provide the cost of, or monetary damage for, repair or replacement as an available remedy. Furthermore, the District fails to cite to any authority interpreting this type of

10

exclusive "repair or replacement" warranty to allow money damages for the cost of repair or replacement, and we are aware of none.

In light of the foregoing, we find that, under the terms of the warranty, the District's claim for breach of warranty was limited to repair or replacement of the field, unless it pled, proved, and obtained a jury finding on an exception that would support damages. *See* TEX. BUS. & COM. CODE ANN. § 2.719(b). To that end, the District argues that it was entitled to damages because the trial court incorrectly instructed the jury regarding the measure of damages. We next turn to that damage-instruction issue.

*(2)      The Jury Was Properly Instructed on Damages*

The District contends on appeal that the trial court erred by refusing to instruct the jury that the measure of damages was the cost of replacing the field. We disagree.

An instruction is proper if it might assist the jury in answering the submitted questions, accurately states the law, and finds support in the pleadings and evidence. TEX. R. CIV. P. 277; *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012); *La. & Ark. Ry. Co. v. Blakely*, 773 S.W.2d 595, 598 (Tex. App.—Texarkana 1989, writ denied). "A trial court is afforded more discretion when submitting instructions than when submitting questions." *Clay v. AIG Aerospace Ins. Servs., Inc.*, 488 S.W.3d 402, 412 (Tex. App.—Texarkana 2016, no pet.); *Wal-Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 470 (Tex. App.—San Antonio 1998, pet. denied). A trial court has broad discretion to determine necessary and proper instructions, therefore, we review a trial court's decision to refuse a particular instruction under an abuse-of-discretion standard. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006); *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000).

11

An abuse of discretion occurs where a trial court acts arbitrarily, unreasonably, or without consideration of guiding principles or clearly fails to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Middleton*, 982 S.W.2d at 469–70.

Here, jury question number three asked the jury, "[W]hat sum of money, if any, if paid now in [this] case would fairly and reasonably compensate [the District] for its damages, if any, that resulted from the failure to comply?" Over the District's objection, the question was accompanied by the following instruction regarding the measure of damages: "Consider the following elements of damages, if any, and none other. The difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." The District contends that the trial court erred by refusing its proffered instruction that the measure of damage should be the "[r]eplacement cost"—that is, "[t]he cost to repair or replace the field with a field constructed from materials of good quality."

The remedy for a breach of an express warranty is initially found in the plain language of the warranty itself. *See Lankford v. Rogers Ford Sales*, 478 S.W.2d 248 (seller will not be bound beyond terms of express warranty). Under Section 2.719(b), if an exclusive remedy, like the one in this case, fails of its essential purpose, the UCC provides that that "remedy may be had as provided in this title." TEX. BUS. & COM. CODE ANN. § 2.719(a). In the case of a breach of warranty for accepted goods,[1] the remedy referred to in Section 2.719 is found in Section 2.714, where the UCC allows the buyer to recover, in money damages, "the difference at the time and

---

[1]Here, there is no question that the District accepted the field.

12

place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." TEX. BUS. & COM. CODE ANN. § 2.714(b); *see New Braunfels Indep. Sch. Dist.*, 2021 WL 5277135, at \*5 (citing Section 2.714 as "the default remedy" available if warranty is shown to fail of its essential purpose); *Equistar Chem.*, 579 S.W.3d at 522 (citing Section 2.714 as remedy "provided in this title" under Section 2.719(b)); *Morgan Bldgs. & Spas v. Humane Society of Se. Tex.*, 249 S.W.3d 480, 491 (Tex. App.—Beaumont 2008, no pet.) (citing Section 2.714 as UCC remedy for breach of warranty).

As detailed above, the exclusive warranty in this case did not allow for money damages for a breach of warranty. Even assuming, *arguendo*, that the District pled, proved, and obtained a jury finding that the express, exclusive warranty in this case had failed of its essential purpose, the only damages the District would be entitled to are those under Section 2.714(b), the language of which the challenged jury instruction closely tracks. *See id.*; TEX. BUS. & COM. CODE ANN. §§ 2.714(b), 2.719(b).

The District contends that it was entitled to a measure of damages that compensated it for the cost of replacing the field—what it calls the "benefit of the bargain." In support of its argument that the trial court erred in rejecting its proffered instruction, the District relies on general breach-of-contract law, and it argues that the measure of damages in this case should have been "expectancy" damages, which provide the "benefit of the plaintiff's bargain." *Quigley v. Bennett*, 227 S.W.3d 51, 56 (Tex. 2007); *Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 328 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). However, the cases cited in support of the District's argument are inapplicable because cases dealing with a breach of

13

warranty are not the same as those dealing with a breach of contract. *Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (Tex. 1991) (under UCC, breach of contract and breach of warranty are different causes of action). For example, if a buyer accepts goods that prove to be non-conforming, the buyer may recover for breach of warranty remedies, but if a buyer rejects the goods or revokes acceptance, the buyer may recover breach-of-contract remedies. *See* TEX. BUS. & COM. CODE ANN. § 2.714; *Selectouch Corp. v. Perfect Starch, Inc.*, 111 S.W.3d 830, 834 (Tex. App.—Dallas 2003, no pet.); *see also* TEX. BUS. & COM. CODE ANN. § 2.608(c) (buyer who revokes acceptance has "the same rights and duties with regard to the goods involved as if he had rejected them"). Absent warranty provisions to the contrary, the cost of repair or replacement is not the applicable measure of damages for a breach of warranty. *See Omni USA, Inc., v. Parker-Hannifin Corp.*, 964 F.Supp.2d 805, 829 (S.D. Tex. 2013) ("The measure of direct damages for a breach of warranty is the market value difference between the goods as delivered and the goods as warranted at the time and place of acceptance.") (citing *Chaq Oil Co. v. Gardner Mach. Corp.*, 500 S.W.2d 877, 878–79 (Tex. App.—Houston [14th Dist.] 1973, no writ), *disapproved of on other grounds by MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132 (Tex. 2014)); *accord Simmons v. Simpson*, 626 S.W.2d 315, 317 (Tex. App.—El Paso 1980, no writ); *Valley Datsun v. Martinez*, 578 S.W.2d 485, 490 (Tex. App.—Corpus Christi 1979, no writ).

While the District claims that its proffered instruction provides the "benefit of the bargain," Section 2.714's "difference in market value" measure *is* a benefit of the bargain remedy. *See W.O. Bankston Nissan v. Walters*, 754 S.W.2d 127, 128 (Tex. 1988) ("[T]he 'benefit of the bargain' measure . . . is the difference between the value as represented and the

value actually received."). Furthermore, the District fails to direct this Court to any breach-of-warranty case like this one where its proffered damage instruction was given, and we are aware of none. Here, the given instruction accurately stated the law, was supported by the pleadings, and assisted the jury in answering the damage question. Therefore, the trial court was within its discretion to instruct the jury as to the Section 2.714(b) measure of damages. *See* TEX. R. CIV. P. 277; *Thota*, 366 S.W.3d at 687. Accordingly, the District's point of error must fail. Having established that the court's charged measure of damages was faithful to Section 2.714(b),[2] we next examine whether the District produced evidence to support that measure of damages.

> *(3)     Even If the District Pled, Proved, and Obtained a Jury Finding that the Warranty Failed of Its Essential Purpose, It Failed to Produce Evidence of Damages*

We turn to FieldTurf's final point of error. FieldTurf contends that it was entitled to a JNOV because the District failed to produce evidence of its damages. We agree.

Even in the face of an exclusive, limited remedy for breach of warranty, a party may still recover money damages under Article 2 of the UCC for breach of warranty "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose." *See* TEX. BUS. & COM. CODE ANN §§ 2.714, 2.719(b). As detailed below, we need not address whether the District pled, proved, and obtained a jury finding that the warranty failed of its essential

---

[2]In the charge conference, FieldTurf objected to the charge on the basis that no evidence had been produced to support even this correct Section 2.714(b) jury charge. That objection is not before us, due to the posture of this case.

purpose.[3]  The District's damage claim must fail in any event because there is no evidence to support the jury's award of damages.

Providing evidence of damages is vital to a plaintiff's cause of action.  In *Chaq Oil*, Chaq Oil bought a tractor from Gardner Machinery Corp., but later, Chaq Oil had to make rather extensive repairs to the tractor.  *Chaq Oil Co.*, 500 S.W.2d at 877–78.  Chaq Oil sued Gardner for breach of the warranty for fitness of use, but the trial court entered a take-nothing judgment in favor of Gardner.  *Id.*  The court of appeals affirmed the trial court's judgment, because the measure of damages for this breach of warranty action was the difference in market value between the equipment as delivered and as warranted, and Chaq Oil presented evidence only of the purchase price and the cost of repairs.  *Id.* at 878–79.  Chaq Oil's claims failed as a matter of law because it failed to present any evidence as to the tractor's difference in market value.  *Id.* at 879.

The facts of this case are very similar to those of *Chaq Oil.*  Here, as in *Chaq Oil*, the measure of damages, as defined by the court's charge, was the same—"[t]he difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted"—and, like *Chaq Oil*, the District produced evidence only of the field's initial purchase price and the cost of replacement.  The District fails to direct this Court to any evidence of the difference in market value between the field it received and the

---

[3]A party seeking money damages in contravention of the remedy provided for in the warranty must plead and prove that the warranty failed of its essential purpose and must also seek a jury finding on the issue.  *See Great Am. Prods. v. Permabond Int'l*, 94 S.W.3d 675, 684 (Tex. App.—Austin 2002, pet. denied).  Failure to do so forfeits the issue. *Id.*; *Henderson v. Ford Motor Co.*, 547 S.W.2d 663, 669 (Tex. App.—Amarillo 1977, no writ) ("[T]here is no pleading by the plaintiff that she was entitled to recover because the warranty failed to its essential purpose, and, therefore, no jury issue was raised or could be submitted.").

field it was promised. Indeed, at trial, the District admitted that there was "no evidence to support this damage measure," and on appeal, the District "concedes that it did not put on evidence of difference in market value at the time of delivery." Even if there had been proof and a finding that the warranty failed of its essential purpose, because there is no probative evidence of the difference in the field's market value at the time of delivery, the District's claim for breach of warranty must fail. *See id.* at 878.

Accordingly, we sustain this point of error, reverse the judgment, and render a take-nothing judgment in favor of FieldTurf. Due to our ruling, we need not address the parties' remaining points of error.[4]

Josh Morriss, III
Chief Justice

Date Submitted: May 3, 2022
Date Decided: July 1, 2022

---

[4]The District's remaining point of error argued that the trial court erred by not granting a partial new trial on attorney fees. FieldTurf's unaddressed points of error argue that the District was not entitled to damages and the trial court should have granted its motion for JNOV because: (1) there was no evidence as to damages related to the gold-colored fibers; (2) the District failed to plead or prove that the warranty failed of its essential purpose; and (3) the record is legally insufficient to establish that FieldTurf had both notice and a reasonable opportunity to cure.